## MOORE v. HUNTINGTON.

1. The court reverses a decree where the court below affirmed a report of a master finding (on evidence not competent, and in the face of answers by surviving partners responsive to a bill) that the interest of a complainant's intestate in a partnership was one-third, the answers averring that it was but one-eighth.

2. Where a person sues in chancery as administrator of a deceased partner, to have an account of partnership concerns, alleging in his bill that he is the sole heir of the deceased partner, the fact that he is not so does not make the bill abate for want of necessary parties: since a decree in his favor as administrator would not interfere with the rights of others who might claim a distribution after the complainant received the money decreed to him.

3. Where a cross-bill and answers are filed in a case and the decree undertakes to dispose of the whole case, it should dispose of the issues raised in them.

4. It is not error in an appellate State court giving judgment against an appellant to include in the judgment sureties in the appeal and writ of error bond. By signing the bond they become voluntary parties to the bond and subject themselves to the decree.

5. On a bill by the representatives of a deceased partner against surviving partners for an account, these last should not be charged with the sum which the partnership assets at the exact date of the deceased partner's death were worth, but only with such sum as by the use of reasonable

care and diligence they could get for them in closing the partnership business.

6. Nor should they be charged with the value of real estate of the partnership the title to which is left by the decree charging them in the heirs of the deceased partner.

APPEAL from the Supreme Court of the Territory of New Mexico.

Mrs. Huntington, widow by a former marriage of Nathan Webb, and administratrix of his estate, brought this, a suit in chancery, against W. H. Moore and W. C. Mitchell, as surviving partners of a firm of which her husband, whose sole heir by the laws of Texas she alleged herself to be, was a member at the time of his death. The object of the bill was to obtain a settlement of the partnership transactions, and she alleged that a large sum was due her on such settlement.

It admitted of no doubt that Moore and Mitchell, who had been doing business at Fort Union, in New Mexico, as post sutlers and general merchants, prior to 1859, in that year took into their partnership the decedent, Webb, who had previously been one of their clerks; and that in the year 1863 they started a business in Southern New Mexico and El Paso, Texas, which was placed under the especial charge of Webb.

It was also agreed that in regard to this latter business Moore, Mitchell, and Webb were equal partners, the interest of Webb being one-third.

In reference to the business at Fort Union the complainant alleged in her bill that her husband, on joining the partnership, put into its capital stock $16,000, and was taken in as an equal partner, and that written articles of agreement to that effect were signed by the parties. The defendants, Moore and Mitchell, who were required to answer under oath, did so, and while admitting the partnership, denied that Webb put in any capital, and averred that he was taken in for his business qualities. They denied that any articles of agreement were made or signed in writing, and they denied that his interest was one-third, and alleged that it was to be one-eighth.

As the transactions of the Fort Union branch of the concern were much the largest, and as nearly all the profits claimed by the complainant were made here, the difference was important.

The defendants denied also that the complainant was sole heir of their late partner, and asserted, contrariwise, that he had left, surviving him, his mother, who had an interest in his estate, and was a proper and necessary party, without whom the cause could not proceed.

The defendants filed a cross-bill against the complainant, which she answered.

No written articles of partnership as to the Fort Union business were produced or shown to have been made. One *Shoemaker*, father of the complainant, and " very intimate with Moore," testified in 1870 that in 1862 Moore had told him, " as near as the witness could recollect," that " all the partners were jointly interested in the business of the firm. He never stated that the interests of the members were equal; neither did he ever state that they were not equal until a year and a half after Webb's death; and I never, until that time, heard anything to raise a doubt of Webb's equal interest." *Houghton*, a brother-in-law of Webb, stated that he " had frequently heard Webb say, and at various times and places, that he was a full and equal partner in both concerns, and in all the various branches and ventures of the firm at Fort Union. On one occasion he referred to the equality of their interests in the counting-room of the sutlers' fort." " To the best of my recollection," said the witness, " W. H. Moore was in the room. He took no part in the conversation, and I am not aware whether he heard what was said or not." For the rest, the evidence as to the extent of Webb's interest in the firm at Fort Union, rested chiefly on the bill and answers.

The case being referred to a master, he held that the interest of Webb was one-third, and on this basis reported $97,596.19 due by the defendants; charging the defendants in such a way that, as his report seemed to indicate, they were charged as to some items twice for the same thing;

charging them with property at the value *which it had at the date of the decedent's death*, and charging them with real estate the title to which was still in the decedent.

Sixteen exceptions to this report were filed by the defendants. Certain particulars of the report, and exceptions to them respectively, which were taken, are stated further on, in the opinion of this court in passing on them. They are, therefore, not more fully given here.

The Supreme Court of New Mexico, to which the case was taken on appeal from the District Court of the Territory, where it originated, reduced, "for errors apparent on the record"—though for what errors did not anywhere appear, nor on account of which of the sixteen exceptions filed—the sum found by the master to $72,920.75, and "in all other respects" affirmed it, and for the amount of $72,920.75; including in its affirmance, of course, the fundamental part by which the master assumed that Webb's interest in the Fort Union firm was one-third. In giving its decree of affirmance the Supreme Court adjudged that the complainant (appellee in the case before it) should have judgment against the securities in the bond for an appeal to that court, for the amount of the judgment, interest, and costs.* The

---

* The compiled laws of New Mexico (page 290, § 5) enact that—

"In case of appeal in civil suits, if the judgment of the appellate court be against the appellant, it shall be rendered against him and his securities on the appeal bond.".

This section of the act of the Territory of New Mexico was founded, according to the allegation of the appellant's counsel, on what is known as the Kearney Code; an enactment made by General Kearney, September 22d, 1846, four years prior to the organization of the Territory of New Mexico, under the act of Congress of 9th September, 1850 (9 Stat. at Large, 446). And when the act was passed, it was applicable, as the said counsel conceived, only to the courts of justices of the peace and probate courts existing and doing business at the time as courts. They conceded, however, that in "*The Beal Case*," then just decided by the Supreme Court of New Mexico, it was held that—

"A statute authorizing judgment against the securities on appeal bond, as well as against the appellants in case of affirmance, is not unconstitutional."

"The correctness of this ruling," they added, "where *a statute is in existence so providing*, it is not worth while to discuss as a general proposition."

The Reporter did not understand whether the Supreme Court of New Mexico regarded that the statute was in existence or not.

cross-bill was not in any manner referred to, and remained undisposed of.

The defendants now appealed to this court, assigning very numerous errors, and among them—

A disregard of the proofs in the matter of Webb's interest in the Fort Union firm; the fundamental matter of the suit.

A want of necessary parties, in the omission of the mother as one.

Decreeing finally upon the complainant's bill and the respondents' answers, without disposing at the same time of the issues raised upon the cross-bill.

Making a decree against the sureties in the appeal bond.

Double charges in the master's report.

Charges on wrong principles, as *ex. gr.* (*a*) of the estate at its value at the date of the decedent's death; (*b*) of real estate over whose title the surviving partners had no control.

*Messrs. John S. Watts, W. M. Evarts, and J. W. Noble, for the appellants; Messrs. W. W. McFarland and S. B. Elkins, contra.*

Mr. Justice MILLER delivered the opinion of the court.

We are of opinion that the ruling which decided the interest of Webb in the Fort Union branch of the concern to have been one-third was erroneous. No witness ever saw any articles of agreement. It is not contended now that any such were proved to have had an existence. No witness was ever present at any conversation between the partners on that subject. One witness, a brother-in-law of Webb, states that he heard Webb say he was an equal partner in the business, which statement was made while Moore was in the room where it was said, but he cannot say that Moore heard it, or that it was said in his immediate presence. Other declarations of the decedent are proved to the same effect, but they are not competent evidence. The statements of Moore and Mitchell are explicit responses to allegations which they are called on to answer, and they are unshaken by anything in the record. It must be held that

the interest of Webb in the Fort.Union branch of the business was only one-eighth.

This necessarily reverses the decree, but other points demand attention.

It is asserted that the suit cannot proceed because the mother of decedent is not made a party, as she is one of his heirs-at-law. But this is not a suit for distribution, and although the complainant does assert herself to be sole heir, her suit may, nevertheless, be sustained as administratrix, in which right she also complains. A decree rendered in her favor in that capacity would not interfere with the rights of others who might claim of her a distribution after she received the money. That objection is not, therefore, tenable.

A cross-bill was filed by defendants against complainants, which was answered. No notice was taken of it in the final decree, which should have been done, though the court undoubtedly supposed it was disposing of the whole case. On the return of the case this may be corrected, and if on the next hearing the plaintiffs in the cross-bill are entitled to any relief, the pleadings are a sufficient foundation for a decree in their favor.

The master presented two schedules or separate statements of the two branches of the business. The Texan and Southern New Mexico venture he styles the firm of N. Webb & Co., and the original partnership W. H. Moore & Co. To this there seems to be no objection. Numerous exceptions were taken to his report, which were overruled, and a decree for $97,596.19 was rendered in favor of complainant. This sum was reduced on appeal to the Supreme Court of the Territory by the sum of $24,675.44, and a final decree rendered there for the remainder. But on what ground this deduction was made, or to what exception it is referable, does not appear.

The decree was rendered in the Supreme Court jointly against the defendants and their sureties in the appeal bond, and it is alleged for error that no such judgment could be rendered against the latter. But there is no error in this. It is a very common and useful thing to provide by statute

that sureties in appeal and writ-of-error bonds shall be liable to such judgment in the appellate court as may be rendered against their principals. This is founded on the proposition that such sureties, by the act of signing the bond, become voluntary parties to the suit and subject themselves thereby to the decree of the court.

Other exceptions to the report of the master, of considerable value in amounts, seem to us to be well taken.

1. In the schedule which refers to the business of N. Webb & Co. the assets are charged to defendants at $78,879.16 for goods, wares, and merchandise, and $76,103.03 for debts due and owing to the firm.

Immediately after this the defendants are charged in items Nos. 3, 4, and 5 with cash received by W. H. Moore of $10,258.75, $8166.70, and $2000.

It seems to us that these items are for money received on account of assets already charged, or for debts collected already charged, and are, therefore, twice charged against defendants.

2. So in the schedule of W. H. Moore & Co., the goods on hand at Fort Union July 2d, 1866, are charged to defendants at $182,656.71 and debts due the firm at $322,958.77.

Looking to the exhibit in the answer of Moore, on which this estimate is based, it is quite clear that in this latter sum, the item of $101,330.95, due by Moore, Adams & Co., is for all or a part of the goods charged in the first item of $182,000, purchased at the time that inventory was taken, and counted afterwards as part of the assets of the old firm. It is thus charged twice against defendants.

3. The defendants are credited in the schedule of N. Webb & Co. with fifty per cent. of the debts due the firm, after deducting what Webb and his wife owed that firm, and in the other schedule they are credited with $100,000, both for bad debts. This may or may not do justice, and it may possibly be the only approximate mode of doing it. But it goes upon the ground of charging the defendants with everything at the date of the decedent's death at its value at that time. Such is not the true rule. It was a legal right

of the defendants, as surviving partners, to close out the concern, collect and dispose of its choses in action, and its property, pay what it owed, and then pay over to the plaintiff her just share of what was left. They were not bound to become purchasers of the decedent's interest at a valuation. But they were bound to use reasonable diligence and care in closing out the business, and in taking care of the decedent's interest. If they used such care and diligence they are only liable for what was realized in their hands when it was done. If they did not they are liable for what might have been realized by the use of such care and diligence. In this latter view it is not now possible to say with accuracy what the state of the account should be, and it is the duty of the master to ascertain this and make proper report on this point as well as others.

4. Again, while the defendants are charged with the value of certain real estate of the partnership, the title of it, which is in the plaintiff, is left there by the decree.

In short, the basis of the account being entirely erroneous in assuming the interest of Webb at one-third instead of one-eighth in the partnership of W. H. Moore & Co., and considering the loose and unsatisfactory character of the whole report, among which are doubtless other errors than those above mentioned, it is utterly insufficient as a foundation for any decree. Nor can we here undertake, with no other report, to render one with which we would be satisfied.

It is, therefore, ordered and decreed that the decree of the Supreme and District Courts be REVERSED; that the case be remanded with directions to set aside the entire report of the master; that a new master be appointed, with directions to adjust the accounts on the basis of an interest of one-eighth in Webb in the Fort Union branch of the business, and one-third in the other, and that such adjustment be made in conformity with this opinion, so far as it can serve for a guide, and that the final decree to be rendered in the case shall be a full settlement of all the matters litigated in the bill, cross-bill, and answers.