## GORDON et al. v. THIRD NAT. BANK OF CHATTANOOGA.

### (Circuit Court of Appeals, Fifth Circuit. June 27, 1893.)

### No. 155.

1. SUPERSEDEAS BOND—SURETIES—JUDGMENT ON MOTION.

Code Ala. § 3661, provides that, on affirmation by the supreme court of a judgment of the court below, judgment shall be rendered against the obligors for the amount of the affirmed judgment. *Held,* that in the absence of anything to the contrary in the statutes of the United States, and in view of Rev. St. U. S. § 914, conforming the mode of proceeding in the federal courts as nearly as may be to that of the state court, summary judgment on motion may be entered against the sureties on a supersedeas bond on the affirmation of the judgment of the circuit court for a district of Alabama, and the filing of the mandate therein. 53 Fed. Rep. 471, affirmed.

2. SAME—MANDATE—FORM OF JUDGMENT.

Where, on the coming down of a mandate showing the affirmance of the judgment, with interest from its date, and costs, the court enters a summary judgment against the sureties on the supersedeas bond, such judgment should be for the amount of the original judgment, with interest and costs; and it is erroneous to compute the interest to date, and then enter judgment for the full amount.

In Error to the Circuit Court of the United States for the Northern District of Alabama.

Action by the Third National Bank of Chattanooga against E. C. Gordon and others. Judgment for plaintiff was affirmed in the supreme court of the United States on writ of error, (12 Sup. Ct. Rep. 657, 144 U. S. 97;) and, upon filing the mandate in the circuit court, plaintiff moved for summary judgment against defendant and Milton Humes and C. C. Harris, sureties on the supersedeas bond. This motion was granted, (53 Fed. Rep. 471,) and, from the judgment so entered, the sureties bring error. Affirmed.

Wm. Grant, R. C. Brickell, and J. H. Sheffey, for plaintiffs in error.

Wm. Richardson and Geo. T. White, (White & Martin, on the brief,) for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and LOCKE, District Judge.

McCORMICK, Circuit Judge. September 19, 1892, the defendant in error filed in the office of the clerk of the United States circuit court for the northern district of Alabama its motion as follows:

"Comes the Third National Bank of Chattanooga, the plaintiff in the above-entitled cause, and shows to this honorable court that E. C. Gordon, the de-

fendant, prayed and obtained a writ of error from the judgment and proceedings had in this court touching said cause to the honorable supreme court of the United States, all of which fully appears from the records of this court; that the defendant, the said E. C. Gordon, together with C. C. Harris and Milton Humes, did on the 17th day of April, 1888, execute an appeal bond in manner and form as required by law in such cases, in the full and just sum of ten thousand five hundred dollars, payable to the Third National Bank of Chattanooga, Tennessee, etc.; that said bond, together with the sureties thereto, was approved by Honorable Harry T. Toulmin, district judge. Said bond is referred to and made a part of this application. Petitioner further shows unto your honor that said writ of error in the above-entitled cause has been duly considered, passed on, and in all things determined and affirmed by the honorable supreme court of the United States, as is shown by the mandate of said supreme court, which was filed in this court on the 6th day of June, 1892, and recorded in Minute Book I, page 421, and is here now presented to this honorable court as a part of this application. Petitioner prays that in accordance with the judgment and mandate of the honorable supreme court of the United States, that this court order an execution in manner and form as required by law to issue against the property, goods, and effects of E. C. Gordon, C. C. Harris, and Milton Humes for the amount of said judgment, to wit, five thousand two hundred and eighty-six dollars and sixty-seven cents, with costs and interest from the date of rendition of said judgment in this court, to wit, the 14th day of April, 1888, together with all such damages allowed on such judgments under the laws of the state of Alabama; and that notice of this application be given to E. C. Gordon, C. C. Harris, and Milton Humes to show cause, if any they have, why the prayer of this petition shall not be granted."

Service of this motion was duly made on all the plaintiffs in error, and October 12, 1892, demurrers were filed, as follows:

"Comes the defendants, C. C. Harris and Milton Humes, by attorney, and demur to the notice and motion filed against them by the plaintiff, and for cause of demurrer assign (1) that this court is without jurisdiction to order the issue of an execution against these defendants, as prayed for in said motion or petition; (2) that the said motion or petition does not make a case of which this court can take cognizance; (3) that the statutes of the state of Alabama allowing damages on judgment affirmed on writ of error or appeal are not applicable to judgments affirmed by the supreme court of the United States. Wherefore defendants pray the judgment of this court whether they shall make further or other answer."

October 31, 1892, these demurrers were overruled, and thereupon Milton Humes and C. C. Harris, plaintiffs in error, proposed to interpose to said motion a plea of payment, in which they would allege that, since the rendition of the original judgment, payments on said judgment have been made to plaintiff to a large amount, exceeding one-half of said judgment. Plaintiff denied that any such payment had been made, and the court thereupon refused to permit said plea of payment to be interposed, or to hear any evidence touching said payments. It clearly appears from the bill of exceptions and the statements of respective counsel on the oral argument in this court that no plea of payment was in fact submitted, or even prepared, and that what actually occurred was a mere colloquium in which counsel for said plaintiffs in error orally stated what they wished to plead, and counsel for the defendant in error orally said that no payment had been made, and the judge said the proposed plea and proof could not be entertained, and the

counsel for said plaintiffs in error announced that they excepted to the views expressed by the presiding judge, but submitted no plea nor offered any proof. Thereupon, on the record in the cause, including the supersedeas bond and the mandate of the supreme court, which was in the customary form, and without other evidence, the circuit court—

"Ordered, adjudged, and decreed that the plaintiff, the Third National Bank of Chattanooga, recover of said defendants, E. C. Gordon, principal, and C. C. Harris and Milton Humes, sureties, the sum of seven thousand two hundred and four and 85/100 dollars, ($7,204.85,) being said judgment, and the interest thereon from date rendered to this date, October 31, 1892, and the further amount of one hundred and twenty-seven dollars, ($127.00,) the costs herein, being in all seven thousand three hundred and thirty-one 85/100 dollars, ($7,331.85,) for which execution will issue."

To reverse which judgment, this writ of error was sued out. The errors assigned are:

"(1) The court erred in the judgment rendered. (2) The court erred in overruling the first ground of defendants' demurrers to said motion of plaintiff. (3) The court erred in overruling the second ground of defendants' demurrers to plaintiff's said motion. (4) The court erred in overruling the third ground of defendants' demurrers to plaintiff's said motion. (5) The court erred in not allowing defendants to file and interpose to said motion a plea alleging that, since the rendition of said original judgment, payments on said judgment have been made to a large amount to plaintiff, exceeding one-half of said judgment. (6) The court erred in not allowing the defendants to offer evidence showing that, since the rendition of the original judgment in said cause, payments on said judgment had been made to plaintiff to a large amount, exceeding one-half of said judgment. (7) The court erred in rendering said judgment against the defendants on notice and motion, without other process or pleadings."

It will be more convenient, and probably as satisfactory, to treat these seven assignments as embraced in the first, and address what we deem it incumbent on us to say to the whole case made by the record. The rule is universal that the affirmance of the judgment in the appellate court fixes the liability of the sureties on a supersedeas writ of error bond, as it shows conclusively that the principal obligor did not prosecute his appeal to effect. Nothing will discharge the sureties on such a bond but the reversal of the judgment or its satisfaction. It is therefore not insisted that the sureties' liability is not fixed by the affirmance. The contention is as to the lawful method and correct practice to enforce that liability in this case. In Babbitt v. Finn, 101 U. S. 7, from which, with very slight modification, the foregoing suggestions have been drawn, it is further said:

"As between the obligors and obligees, all the obligors are principal debtors, though, as between each other, they have the rights and remedies resulting from the relation of principal and surety. When they execute the bond, they assume the obligation that they will answer all damages and costs if the principal fails to prosecute his appeal to effect and make his plea good, from which it follows that if the judgment is affirmed by the appellate court, either directly or by mandate sent down to the subordinate court, the sureties proprio vigore become liable to the same extent as the principal obligor."

In Blossom v. Railroad Co., 1 Wall. 655, Judge Miller, in illustrating the matter he was therein discussing, said:

"Sureties, signing appeal bonds, stay bonds, delivery bonds, and receiptors under writs of attachment, become quasi parties to the proceedings, and subject themselves to the jurisdiction of the court, so that summary judgments may be rendered on their bonds or recognizances."

This language of the eminent judge, in the connection and with the purpose used, implies that the practice indicated is now general and well settled. Such was not the ancient course of the common law, for then, upon affirmance of the judgment, the obligee in the supersedeas bond might bring his action of debt on the bond, or proceed by scire facias, at his election. In this connection it may be well to notice that the motion for judgment in this case has all the necessary elements of a scire facias; and proper notice thereof having been served on all of the obligors in the bond, and they having all appeared, and the sureties having interposed demurrers, not well taken, considering it as a scire facias, and having failed to plead or answer, the court could well proceed to enter judgment on the record alone, without other proof.

Dismissing this view of the case, however, and considering it, as the parties and the circuit court appear to have treated it, as a proceeding authorized by the statute laws of Alabama and the practice of the United States circuit court for that state and of United States courts in general, was the proceeding in accordance with law? The United States statutes and the supreme court rule alike require that sureties on a supersedeas bond shall bind themselves to answer for all damages and costs if their principal shall fail to prosecute his writ of error or appeal to effect. This is no new rescript, for so aforetime was the law. In neither of these can we find a "Thus it is written," from which it follows that if the judgment is affirmed by the appellate court, either directly or by a mandate sent down to the subordinate court, the sureties, proprio vigore, become liable to the same extent as the principal obligor, and become quasi parties to the proceedings, and subject themselves to the jurisdiction of the court, so that summary judgments may be rendered on their bonds. This language, then, of that most eminent court from which it is taken, must find its support in that "use and wont" which has crystalized into a settled and general practice, or in the statutes and practice of the courts of the various states in which the United States subordinate courts are held. It is matter of public, political, and judicial history that, in the beginning of our dual system of government, much jealousy existed, and doubt was indulged and suggested as to the jurisdiction and powers of the national courts. The undisciplined ranks of the legal profession, and many trial judges in the first years of their service, laid painful stress on a popular proposition that the national courts—if they could, suffer themselves to refer to the United States as a nation—were all courts of limited jurisdiction, and must keep within the literal grant of their constitution and ordination. The veterans at the bar and on the bench,

and the highest courts, took deeper soundings in the well of legal lore, and early and uniformly held, as occasion arose, that, where the state of the parties or the subject-matter brought the case or question within the jurisdiction of the national courts, those tribunals were no more fettered by "Thus only is it written" than any courts of general jurisdiction, but, like all other courts, were clothed with the power and charged with the duty of giving such rational construction to state and national statutes, and such practical application of the rules of pleading, practice, and procedure, as would meet the varying features and growing volume of questions springing out of advancing business and social life. In no system of civilization that has ever existed since the day of "man's first disobedience and his fall" could all these cases be anticipated. The judiciary is constituted to meet them. In free countries it keeps itself in line with organic principles, legislative beacons, and precedents, all of which it must construe. In this sense, even the country of the most strictly limited constitution and government must have much of what is often disparagingly called "judge-made law;" for the judges are charged to declare what the written law imports, and to fix and observe correct rules of practice, consistent with their construction of the written law, and to apply the same to cases as they arise.

In Alabama the statute, which has now been in force more than 40 years, after providing, in cases for the recovery of money only, that, to secure a supersedeas on appeal, the appellant or some other person shall give bond in double the amount of the judgment, conditioned to prosecute the appeal to effect, and, if he fails therein, to satisfy such judgment as the supreme court may render in the premises, further provides:

"If the supreme court affirms the judgment of the court below, it must render judgment against all or any of the obligators in the bond for the amount of the judgment affirmed, ten per cent. damages thereon, and the costs of the supreme court."

No further action need be taken—possibly no further action can be taken—in that case in the state circuit court. There can be no question that, if this litigation had been in the state courts of Alabama, the defendant in error here would have been entitled to its judgment against all the obligors in the supersedeas bond on the affirmance of the judgment below, and would have had such judgment in the supreme court. The statute of Alabama cannot by its own force control the practice of the supreme court or other courts of the United States, and it is not the practice of the supreme court of the United States, on affirmance of the judgment of a subordinate court, to make the judgment of that court the judgment of the supreme court, to be directly executed as such. In lieu thereof, its mandate issues to the court a quo commanding "that such execution and proceedings be had in said cause as, according to right and justice and the laws of the United States, ought to be had, the said writ of error notwithstanding."

In substantially similar conditions, on such a mandate, judgment is entered against stipulators—principal and sureties—in admiralty. Surely, according to right and justice, such judgment ought to be had, not merely for convenience, as has been suggested, but to award bare justice to the party whose right to execution has been suspended by the sureties on the bond. Does any law of the United States forbid? If its express letter is wanting, do not all the analogies of the law of the United States and the logic of the situation require that the defendant in error should have its judgment on the mandate and on the supersedeas bond against all the obligors in the bond? The jealousy and doubt, and the tendency to limit by the letter the jurisdiction of the subordinate courts of the United States, and the hesitation or neglect of some of those courts to give a sound construction to conformity statutes theretofore passed, is plainly rebuked with marked emphasis in the conformity statutes passed in 1872, and now embodied in section 914 of the Revised Statutes, so often quoted here and in the trial courts. It will be observed that this much-quoted section does not so much authorize the conformity it mentions as it requires it with earnest emphasis, "any rule of court to the contrary notwithstanding." The conformity is required to be, not as near as may be possible, or as near as may be practicable, but only as near as may be devolving upon the judge to be affected by it the duty of construing and deciding its sound application.

We have examined with care the Alabama cases cited and relied on by the plaintiffs in error, but find nothing in them to support the contention of plaintiffs in error. Of course, the language quoted in the brief of counsel is found in the opinion of the court, but it has relation to a different kind of supersedeas bond, taken under another section of the Alabama Code, materially different from the section applicable to his case, and in reference to which the bond in this case was manifestly taken and approved by the distinguished judge of the southern district of Alabama, so long the judge of one of the state circuit courts of that state, and entirely familiar with her laws. We do not have ready access here to the statutes and reports of all the states, but, as far as we are able to ascertain, there is provision made in all the states for rendering summary judgment against all the obligors in supersedeas bonds when the judgment superseded is affirmed; and we do not find in reason, or in authorities of text writers or of adjudged cases, or in the statute law of Alabama or of the United States, ground for refusing the defendant in error an order for execution in its favor against all of the plaintiffs in error for the amount of $5,286.67, and costs in the circuit court, with interest from the date of the original judgment until paid, at the same rate per annum that similar judgments bear in the courts of the state of Alabama, and the costs of the supreme court, with like interest thereon from the date of the judgment of affirmance until paid.

The order of the circuit court from which this writ of error is taken added in the interest from the date of the original judgment

to the date of the order for execution, and gave judgment and ordered execution for this new sum. In that respect said order of the circuit court goes beyond the mandate of the supreme court and the correct practice in such cases, and is to that extent erroneous. In that respect, and to that extent only, said order must be reversed, with directions to the circuit court to order execution in the manner and to the extent above indicated. Appended to this opinion is a list of some of the authorities we have examined and considered in connection with this case, and which are referred to as supporting or illustrating the views we have expressed and the conclusion we have reached.

It is therefore ordered that the judgment of the circuit court be affirmed, except as to the compounding of the interest, and that the circuit court order execution against the parties in accordance with the directions in the foregoing opinion, and that defendant in error pay the costs of this court herein.

Babbitt v. Finn, 101 U. S. 7; Blossom v. Railroad Co., 1 Wall. 655; Tidd, Pr. cc. 43, 44; Rev. St. U. S. §§ 716, 914, 1000; Sup. Ct. Rule 29, 3 Sup. Ct. Rep. xvi.; Code Ala. 1886, §§ 3623, 3661; Railroad Co. v. Horst, 93 U. S. 291; Nudd v. Burrows, 91 U. S. 426; Beall v. New Mexico, 16 Wall. 535; Smith v. Gaines, 93 U. S. 341; Gwin v. Breedlove, 2 How. 29; Amis v. Smith, 16 Pet. 303; Crawford v. Kirksey, 55 Ala. 291; Hughes v. Hatchett, Id. 546.