McCLASKEY et al. v. BARR et al.

(Circuit Court, S. D. Ohio, W. D. March 27, 1897.)

1. BOND FOR COSTS—SUMMARY REMEDIES.
    A rule of court prescribing the form of a bond, and providing that, when costs become due by default or otherwise, a judgment or decree may be entered therefor against the surety on motion and ten days' notice, is valid, as a surety is supposed to know the law, and consent to the proceedings for summary remedies by signing the bond.

2. SAME—SURETIES CONCLUDED BY DECREE AGAINST PRINCIPAL.
    The sureties become voluntary parties to the suit, and are concluded by the decree for costs entered against their principals.

3. SAME—LIABILITY FOR COSTS ACCRUING BEFORE DATE OF BOND.
    The bond covers costs accrued before the date of the bond, as well as those accruing after its execution.

4. SAME—LIBERAL CONSTRUCTION OF STATUTE.
    Statutes requiring security for costs, being remedial in their nature, are to be liberally construed to effectuate that object.

5. SAME—LIABILITY FOR COSTS ON APPEAL.
    A bond executed in the trial court to secure "costs in this case" covers costs on appeal.

6. SAME—LIABILITY FOR COSTS ACCRUING AFTER SURETY'S DEATH.
    Liability upon the bond does not terminate with the surety's death, but his estate continues liable for costs accruing after his death as well as before, though the language of the bond is, "I hereby acknowledge myself security for costs."

7. SAME—EFFECT OF EXECUTION OF NEW BOND.

The giving of an additional bond after the death of the surety in the original bond does not discharge the estate of the surety in the old bond.

8. ADMINISTRATORS—TERMINATION OF TRUST.

An administrator is not discharged from his trust until full administration is accomplished, and therefore an administrator was not discharged by filing in the probate court a written statement under oath that no assets had ever come into his hands as administrator, and that no claim of any kind had ever been presented to him, excepting such as had been fully paid by the widow, and that, having received no funds as administrator, and having paid out nothing, he filed the statement under oath as his final account as administrator and for the discharge of his trust.

9. ADMINISTRATOR OF SURETY IN COST BOND — PRESENTATION OF CLAIM FOR COSTS.

Before instituting summary proceedings against the administrator of a surety, it is not necessary to make presentation of the claim, as the surety, by executing the cost bond, became a party to the suit, and consented to the summary method of enforcing his liability.

10. LIMITATION—TIME WHEN LIABILITY UPON BOND FOR COSTS ACCRUES.

Liability upon a cost bond does not accrue until the decree for costs is entered, and limitation runs only from that date.

11. SAME—LIMITATION OF PROCEEDINGS AGAINST ADMINISTRATORS.

Under the Ohio statute fixing the limitation for suits against an administrator at four years from the giving of bond, with the proviso that "no cause of action against any executor or administrator shall be adjudged barred by lapse of time until the expiration of one year from the time of the accruing thereof," a proceeding against the administrator of a surety in a bond for costs, instituted within one year after the decree for costs was entered, was not barred.

12. SAME—PARTIES TO MOTION.

To a motion for judgment upon a bond for costs the surety in which was dead, it was proper to make the administrator of the surety, and the distributee and heir, parties, as the estate of the surety, although it had passed into the hands of the heir and distributee, had not been fully settled.

13. JUDGMENT AGAINST ADMINISTRATOR—COSTS.

Where the estate of an intestate, although it had passed into the hands of the heir and distributee, had not been fully settled, judgment against the administrator was the proper proceeding, and not judgment against the heir and distributee as provided by Rev. St. Ohio, §§ 6217, 6218.

14. COSTS—JOINT OBLIGORS—SURVIVORSHIP.

The surety in an original bond for costs, and an additional surety, who became bound after his death, were not joint obligors; and the claim that the death of the old surety terminated his liability at law by reason of the doctrine of survivorship, and that, the remedy at law being gone, equity would not afford relief against the surety, has no foundation in law or in fact.

15. SAME.

The doctrine of survivorship having been abolished in Ohio, the death of one of two joint obligors does not terminate his liability.

16. SURETIES—COST BOND.

The sureties in a bond for costs are liable to judgment without the property of the principal being first exhausted.

Charles W. Baker and John W. Herron, for sureties.

Bateman & Harper, and Stephens & Lincoln, for defendants in possession.

SAGE, District Judge. The defendants William Henry Elder and other defendants in possession move the court to enter up judgment against James S. White, Howard Ferris, administrator of Samuel Cooper, deceased, and Hannah Cooper Fewlass, sureties for

costs in the above-entitled cause. The obligations of these several parties are as follows:

On the 19th of October, 1889, James S. White, with Benjamin M. Stewart, signed upon the printed form of cost bond used in this court an obligation as follows: "I hereby acknowledge myself security for costs in this case, on behalf of Robert Eldridge, W. S. Thurston, and Arnold McMahon,"—at the same time qualifying in the sum of $10,000. On the same day he signed another cost bond as follows: "I hereby acknowledge myself security for costs in this case on behalf of Samuel Barr, Robert Barr, et al." This, also, was signed with Benjamin M. Stewart, and accompanied by an affidavit that he was worth $10,000 in real estate within the jurisdiction of the court, and subject to execution, levy, and sale.

Samuel Cooper, on the 15th of September, 1887, signed a cost bond as follows: "I hereby acknowledge myself security for costs in this case,"—and the same day qualified in the sum of $10,000. Each one of these bonds was under the title and number of the case. Samuel Cooper died on or about the 30th day of August, 1888, intestate and without issue, leaving his widow, Hannah Cooper, now Hannah Cooper Fewlass, his sole heir and distributee. At the time of his death he was owner of a large amount of personal property and real estate in Hamilton county, Ohio. About September 11, 1888, Howard Ferris was duly appointed by the probate court of said county administrator of his estate, gave bond as required by law, and entered upon the discharge of his duties. He has never resigned or been discharged. All the personal property and real estate of which Samuel Cooper died seised passed into the possession of his widow, now Hannah Cooper Fewlass, and she is still possessed of the real estate. The claim of the moving parties is that the costs secured in this case are a lien upon the estate of Samuel Cooper, including all the real estate of which he died possessed.

James S. White and Benjamin M. Stewart, for plea to the citations served on them, admit that on the 19th of October, 1889, they became sureties,—on one bond on the cross petition filed at that date by Samuel Barr and Robert Barr et al., and on one bond on the cross petition filed on that date by Robert Eldridge, W. S. Thurston, and Arnold McMahon. They severally aver that their liability under said bonds covers only the actual costs accruing after the date of filing said cross petitions and made thereon, and not for the general costs incurred under the original bill. They also severally aver that the costs taxed and claimed against them embrace large items for which they are in no way liable.

They deny liability for the costs incurred in the circuit court of appeals, as they did not sign the bonds for appeal in said cause. Further, they severally aver that Robert Eldridge, W. S. Thurston, and Arnold McMahon, for whom they became sureties on one of said bonds, live within the jurisdiction of this court, and are solvent; that execution has been issued against them for said costs, and levied on real estate belonging to them; that Thurston has paid part of the costs for which he is liable, and is able to pay the en-

tire amount of the same, and said costs can be collected from him by the process of this court.

They further aver that the complainants on the cross petition of Samuel Barr and Robert Barr and others are, or some of them are, solvent, and the costs incurred on said cross petitions can be collected by proceedings against them. They therefore pray that the defendants be required first to exhaust the principals for whom they are sureties before any decree be rendered against them in this matter, and for other and proper relief in the premises.

Howard Ferris, for plea to the notice of said motion served upon him, denies that he is administrator of Samuel Cooper, deceased; avers that he ceased so to be on the 23d day of March, 1892, and that on that day the estate was settled, and on the 31st of March, 1892, the costs of the estate were paid, and that he then and from that time ceased to be the administrator of said estate, or to be in any way connected with it; that he fully accounted under the statute as administrator, fully executed his trust, and has no money or property in his hands belonging to the estate, nor has he had at any time since March 23, 1892.

He further pleads that no claim was presented to him for allowance because of costs or otherwise, and that more than four years have elapsed since he gave bond as administrator, and since due notice of his appointment as such was given to all parties interested in this case, and that the claim is barred by the statute of limitations.

Hannah Cooper Fewlass, for plea to the notice to her, sets up that the estate of Samuel Cooper was long since settled and the property distributed, that no claim concerning the subject-matter of said notice was ever presented to the estate, and that any such claim was long since barred by the statute of limitations. She further pleads that she never signed any such bond, and is not liable thereon, because she denies the jurisdiction of this court to in any way require her to answer or respond by reason of any of the matters set out in the notice, or to in any way authorize or permit any proceedings against her.

Howard Ferris, as administrator, pleads to the notice to surety served on him that he long since ceased to be the administrator of Samuel Cooper, deceased, having under the statute fully executed his trust and accounted for said estate; also, that the claim now made was never presented to him as administrator, and that it was long since barred by the statute of limitations.

The decree as to costs was entered October 24, 1895, nunc pro tunc as of October 25, 1894, at which date it was ordered. The entire amount is $19,803, of which $3,823.32 are costs in the United States circuit court of appeals, leaving $15,979.68 as the costs of this court. Notices were issued to James S. White on the 8th day of April, 1896, that the motions for judgment would be called up for hearing on Tuesday, the 5th of May, 1896. Notices to Howard Ferris as administrator, and to Hannah Cooper Fewlass as sole heir of Samuel Cooper and sole distributee of his estate, were issued on the 13th day of April, 1896, that on Tuesday, the 12th day of May, the motions for judgment would be brought on for hearing. Executions were issued against

Benjamin S. Stewart on the 9th of May, 1896, judgments having been taken against him prior to that date. They were returned, "No goods, chattels, lands, or tenements found whereon to levy." Rule 9 of this court provides that in all cases the clerks shall require an indorsement for costs, and that the following form upon the præcipe shall be sufficient: "I, A. B., acknowledge myself security for all costs for which the plaintiff may be liable in this suit." The rule also provides that, when such costs shall become due by default or otherwise, a judgment or decree may be entered therefor against the surety on motion and 10 days' notice. This, with other rules, is printed in 2 Bond, 433,[1] and will be found upon page 82 of the printed rules of the court. The rules are authorized by Rev. St. U. S. § 918 and equity rule 89. It has been held that a surety is supposed to know the law, and consent to the proceedings for summary remedies by signing the bond. Also, that such regulations are valid. Beall v. New Mexico, 16 Wall. 535, 539, 540; Moore v. Huntington, 17 Wall. 417, 422, 423; Johnson v. Elevator Co., 119 U. S. 388, 400, 401, 7 Sup. Ct. 254. It is not necessary to cite authorities in support of the right and duty of the court to proceed summarily in this case. Neither was denied on the hearing. The sole defense was upon the special facts relating to the case of each person sought to be charged.

Coming, then, first, to the case of James S. White, the plea for answer presents—First, the question whether his bonds cover costs accrued before the date of the bonds; second, whether they cover costs on appeal; third, whether they cover costs on the bill; fourth, whether the moving defendants must first exhaust all remedies against the principals. The decree for costs entered against Samuel Barr et al. on the 24th of October, 1895, amounted to $18,248.58. The decree for costs against Robert Eldridge et al., entered the same day, amounted to $18,171.53. That those decrees are conclusive against the sureties as to the fact and the amount of their liability, and as to the questions that might have been raised or made by the principals, is fully attested by the following authorities:

In Moore v. Huntington, 17 Wall. 417, the supreme court said, at page 423, that sureties on an appeal bond, by the act of signing the bond, became voluntary parties to the suit, and thereby subjected themselves to the decree of the court. The general doctrine is stated in Brandt on Suretyship to be that the surety is concluded, in the absence of collusion or fraud, by the judgment against the principal, even as to the amount of the debt. This doctrine was referred to by the supreme court of Ohio in Braiden v. Mercer, 44 Ohio St. 339, 7 N. E. 155, as "an established principle," and in Walsh v. Miller, 51 Ohio St. 462, 38 N. E. 381, as "the settled law of the state"; the surety being in privity with the principal. It was applied in Sted-

---

[1] Rule 9 is as follows:

"Security for costs. In all cases, the clerk shall require an indorser for costs. The following form upon the precipe, or writ, shall be sufficient: 'I, A. B., acknowledge myself security, for all costs for which the plaintiff may be liable in this suit.' And when such costs shall become due, by default or otherwise, a judgment or decree may be entered therefor against the security on motion and ten days' notice."

man v. Ingraham, 22 Vt. 346, to a surety for costs, and upheld in Parkhurst v. Sumner, 23 Vt. 539. In Nolly v. Squire, 1 Hill (S. C.) 41, the supreme court of South Carolina held that the surety for costs, by signing the bond, became a party to the record, and was as effectually bound by the judgment of the court as if he had been a party to the suit. Quite as distinct and emphatic is the ruling by the supreme court of Massachusetts in Way v. Lewis, 115 Mass. 26, and in Cutter v. Evans, Id. 27. In Gaines v. Travis, Abb. Adm. 422, Fed. Cas. No. 5,180, the district court of the Southern district of New York held that, under the rule promulgated by the supreme court (see rule 10, subd. 8), execution properly issues against stipulators, summarily, upon the decree rendered against their principals; the stipulation being regarded as a submission by the stipulator to such decree as may be rendered against the party for whom he is bound. This case is cited in U. S. v. Seven Barrels of Distilled Oil, Fed. Cas. No. 16,253. Equity rule 89 is sufficient authority for the rule of this court under which the cost bond was taken. See, also, admiralty rule 3. It results from these authorities that the sureties are concluded by the decree for costs entered against their principals.

The next question is whether the sureties are bound for costs accruing before the date of their bonds. The bonds were signed October 19, 1889. The case was removed from the state court to this court April 5, 1887. The bonds are "for costs in this case." In Sawyer v. Williams, 72 Fed. 296, where the surety was bound "for costs and fees in" the case, he was held liable, under the rules of the court, upon judgment rendered against his principal for the costs accrued in the state court before the removal, as well as for the costs in the federal court. The cost bond in that case was signed after the removal to the federal court. The rules referred to do not differ in substance, as to the surety, from the rule in this court. In Wilson v. Hudspeth, 3 Dev. 57, the condition of the bond was that the surety should pay "all the costs." It was held that he was liable for costs accrued before the date of the bond, as well as those subsequent. The addition of the word "all" makes no material difference. The cost bond includes costs prior to, as well as those subsequent to, the signing of the bond.

The next question is, do the bonds cover costs on the appeal? It was so held in Dunn v. Sutliff, 1 Mich. 24, where it was decided that the surety for costs in the justice's court was liable for costs in the appellate court. The court said that the surety, when he became such, was fully advised that the judgment of the justice was not conclusive, and that the case might be reviewed upon appeal, which was in the nature of a new trial; and that the same reasons which required security for costs in the justice's court applied with equal force to the costs recoverable upon the appeal. So in Robinson v. Plimpton, 25 N. Y. 484, the court of appeals made a similar ruling, citing several prior cases decided in New York. In Smith v. Lockwood, 34 Wis. 72, it was held that statutes requiring surety for costs are remedial, and to be liberally construed; also, that a surety for costs in a justice's court was liable for costs in the circuit court. Referring to the doctrine that the obligation of the surety is strictissimi

juris, which might be supposed to have led to a strict construction in favor of the surety, 'the court said that that point was explained by reason of the presence and operation of another rule or principle, which countervails that alluded to, which is that statutes requiring security to be given for costs, being remedial in their nature, are to be liberally construed to effectuate that object. The statute referred to required the plaintiff to give security "for the costs," and provided for the dismissal of the action upon his failure to do so. There was no provision defining the extent of the surety's liability. In Martin v. Kelly, 59 Miss. 664, 665, it was held that the surety for costs was liable for the costs accrued in the appellate court, "to which defendants below were compelled to resort to free themselves from the erroneous decree against them, which the complainant was enabled to obtain by means of the security for costs, but for which this case would have been dismissed." In Hendricks v. Carson, 97 Ind. 245, it was held that a bond for costs given in the court below covered the costs on appeal to the supreme court. The statute in that case required security "for the payment of all costs which may accrue in the action." The court held that the case in the supreme court was the same action that had been commenced in the circuit court; that the proceedings in the supreme court were a regular part of legal proceedings in the action, and the costs accruing thereon were a part of the costs legitimately accruing in the action; and that it was within the letter and spirit of the statute to hold that the bond of a nonresident plaintiff for costs, filed in the circuit court, covers costs that accrued in the supreme court on an appeal.

There is no substantial difference between the form of the bond in that case, and the bonds under consideration, for "costs in this case." The surety must be held liable for the costs upon appeal. The bond in one case is on behalf of Samuel Barr and Robert Barr et al.; in the other case, on behalf of Robert Eldridge et al. The decree entered against Samuel Barr et al. was for $18,248.58, and the decree against Robert Eldridge et al. for costs was for $18,171.53. These decrees cover in the main the same items, and the decree against White will be in accordance with the decrees made against his principals, as above stated.

We come, now, to the case of Samuel Cooper's estate and of Mrs. Fewlass. The liability upon the bond given by Samuel Cooper, which has already been referred to, did not terminate with his death, but his estate continued to be liable, after his death, for costs which accrued thereafter as well as theretofore. This was decided by the supreme court in Broome v. U. S., 15 How. 143. There the surety upon the bond of a collector in Florida died upon the 24th of July, and the approval of the comptroller was not written upon the bond until the 31st of July. It was held that it was properly left to the jury to ascertain the time when the collector and his sureties parted with the bond, to be sent to Washington, and they were instructed that, before they could find a verdict for the surety, they must be satisfied from the evidence that the bond remained in the hands of the collector, or the surety, until after the 24th of July. In U. S. v. Keiver, 56 Fed. 422, the United States

circuit court for the Western district of Wisconsin held that the obligation of a surety on a bail bond is a continuing one, and binds his estate after his death. In Lloyd's v. Harper, 16 Ch. Div. 290, a father, on the occasion of the admission of his son as an under-writing member of Lloyd's, addressed to the managing committee of that body a letter by which he held himself responsible for all his son's engagements in that capacity. Held, that the guaranty was not determined by the death of the father, or by the notice of it, but that his estate was liable in respect of engagements con-tracted by the son after his death. Also, that a guaranty consid-eration, given once for all, cannot be determined by the guarantor, and does not cease on his death.

In Green v. Young, 8 Greenl. 14, it was held that the liability of a surety in a bond conditioned for the official good conduct of a deputy sheriff during his continuance in office extended as well to defaults committed after, as to those committed before, the death of the surety. The court, in answer to the plea of counsel for the de-fendant that the liability of the intestate was confined to breaches accruing in his lifetime, said that that limitation was not to be found in the instrument, that the plaintiff had the right to repose on the solvency and sufficiency of the surety, and that, if his se-curity in regard to future breaches ceased upon the death of the surety, he might suffer, however vigilant, because he might incur severe responsibilities arising from subsequent breaches before he could be advised of the death of the surety. In Voris v. State, 47 Ind. 345, it was decided that the estate of a surety upon a guard-ian's bond is liable after the death of the guardian which occurred subsequent to the death of the surety. In Moore v. Wallis, 18 Ala. 458, the liability incurred by the surety on a guardianship bond is not discharged by his death, but continues for the full term of the guardianship. In Turquand v. Kirby, L. R. 4 Eq. 123, the question to be decided was, where stock was in the name of a deceased per-son, but was really the property of another, who was the beneficial owner? It was held that the estate of the deceased was liable for calls subsequent to his death. Lord Romilly said that it was true that the debt did not exist when the testator died, but in that re-spect it did not differ from the cases where a testator had in his lifetime become surety for the due performance of a covenant which was broken many years after his death.

It follows from these cases that the liability of Cooper's estate continued after his death. It appears that after his death addi-tional security was given, but there was no step taken towards ob-taining the release of the estate from the obligation of the bond, and the surety of the additional stipulation is insolvent. More-over, he qualified for only half the amount for which Cooper qual-ified. It has been held that the court cannot release a surety for costs without the consent of the party for whose benefit he became surety. Holder v. Jones, 7 Ired. 191; Publishing Co. v. Bartlett, 5 Wkly. Law Bul. 501. It has been repeatedly held that the liability of a surety on a bond given by an employé to secure the faithful discharge of his debts cannot be terminated on notice by executor

of the surety after his death, although the employé was liable to discharge at any moment. Calvert v. Gordon, 3 Man. & R. 124. See, also, Calvert v. Gordon, 7 Barn. & C. 809, 812, and Gordon v. Calvert, 4 Russ. 581, before the chancellor on appeal. In this last case it appeared that, in consequence of the notice from the executrix of the surety that she would no longer be liable, the employers of the principal required him to give an additional bond; but the lord chancellor called attention to the fact that, as Gorden's executrix was only liable to the extent of assets, it was necessary to require additional security, and that the old surety was not thereby discharged. That ruling is exactly in point upon the facts in this case.

It appears from the transcript of proceedings of the probate court of Hamilton county in the matter of the estate of Samuel Cooper, that the administrator, on the 23d of March, 1892, filed a statement in writing under oath that no assets had ever come into his hands as administrator; that no claim of any kind had ever been presented to him, excepting such as had been fully paid by Cooper's widow; also, that, having received no funds as administrator, and having paid out nothing, he filed the statement under oath as his final account as administrator, and for the discharge of his trust. This was supported by the affidavit of Mrs. Fewlass. The filing of that statement was the last thing done in the matter of the estate. The record of proceedings in regard to the estate shows that, excepting the appointment of the administrator, his giving bond and notice, the taking of an inventory of the partnerships in which he was interested, and an inventory of his personal estate, the initiation of proceedings—never completed—to settle the affairs of the partnerships, and the filing of the sworn statement which is designated the "final account," nothing has been done. The probate court made no order upon the affidavit and statement filed on the 23d of March, 1892. Even if it had made the order for a discharge which was asked, it would have been ineffectual, as was held in Weyer v. Watt, 48 Ohio St. 545, 28 N. E. 670, where the supreme court said that they found no power conferred upon the probate court to discharge an executor or to extinguish his authority as trustee, and that, unless the authority of the executor or administrator be terminated according to the provisions of the statute, "it is his duty to continue the administration of the estate until it shall be entirely settled." Further on the court said:

"Full administration is accomplished only when all the assets have been converted into money, the proceeds applied to the payment of the debts, and the balance, if any, distributed to the legatees or other proper distributees, unless a different disposition of specific property is made by the will."

In Farran v. Robinson, 17 Ohio St. 242, it was held that:

"Where an administrator has made settlement, believed by him to be final, of the estate of his intestate, and the personalty of the estate has been exhausted in the payment of debts, and of statutory allowances to the widow, and afterwards an action is brought against the administrator on a liability contracted by the intestate, resulting, though contested in good faith and with due diligence, in a judgment against the administrator, such judgment, remaining unreversed and unsatisfied, is conclusive evidence of indebtedness against

the estate, and cannot be collaterally impeached for mere error. In such case the administrator is entitled to an order for the sale of so much of the real estate of which the intestate died seised as may be necessary to satisfy the judgment, although such real estate may have been partitioned among the heirs of the intestate, and by them sold and conveyed wholly or in part to purchasers thereof."

Presentation to the administrator of the claim for costs now sought to be enforced is not necessary, for, when Cooper became surety for costs, he thereby consented to the summary method resorted to in this case of enforcing his liability. Moore v. Huntington, 17 Wall. 417, 422, 423; Johnson v. Elevator Co., 119 U. S. 388–400, 401, 7 Sup. Ct. 254; Sup. Ct. Equity Rule 10; Chappee v. Thomas, 5 Mich. 53, 59, 60; Davidson v. Farrell, 8 Minn. 258, 262–264 (Gil. 225). Also, for the reason that the surety, by executing the cost bond, became a party to the suit. In Moore v. Huntington, 17 Wall. 422, 423, Mr. Justice Miller, announcing the opinion of the supreme court, said that sureties on appeal and writ of error bonds, by the act of signing the bonds, "become voluntarily parties to the suit, and subject themselves thereby to the decree of the court." See, also, Blossom v. Railroad Co., 1 Wall. 655, 656; Loh v. Judge, 26 Mich. 186–188. It was held in Musser's Ex'r v. Chase, 29 Ohio St. 577–586, that bringing in the administrator is simply a revival of a pending suit, and prior presentation of a claim to him is unnecessary. See 6 Bac. Abr. p. 112 et seq., and Gordon v. Bank, 6 C. C. A. 125, 56 Fed. 790, 793, for authority that the proceeding is analogous to that of scire facias at common law. In Gager v. Prout, 48 Ohio St. 89, 26 N. E. 1013, additions had been made by the county auditor to the returns for taxation of a deceased person, on notice to the executor, and it was contended that there was no valid presentation of the claim by the treasurer to the executor for allowance. As to this the court answered that the treasurer to whom the return had been made was not required to formally present the amount of the taxes for allowance before bringing suit for the same.

It is further contended that the claim is barred by the statute of limitations. The statutory limitation for suits against an administrator, excepting in certain cases not pertinent to the question now before the court, is four years from the giving of bond, provided that any creditor whose cause of action shall accrue or shall have accrued after the expiration of the four years and before the estate is fully administered may commence and prosecute such action at any time within one year after the accruing thereof and before such estate shall have been fully administered, "and, no cause of action against any executor or administrator shall be adjudged barred by lapse of time until the expiration of one year from the time of the accruing thereof." It has already been shown that the estate of Samuel Cooper has not yet been fully administered. The cause of action now asserted did not accrue until more than four years from the giving of bond; that is, not until the decree for costs was entered on October 24, 1895. Until then the liability of the complainants and cross complainants for costs was not ascertained or decreed,

79 F.—27

and prior to such ascertainment or decree no proceeding could have been maintained upon Cooper's bonds. The supreme court of Ohio in Newton v. Hammond, 38 Ohio St. 430, decided that "a right of action on a guardian's bond to recover from the sureties the amount remaining in the hands of the guardian first accrues to the ward when such amount is ascertained by the probate court on the settlement of the guardian's final account." The supreme court of Wisconsin in Mann v. Everts, 64 Wis. 372, 25 N. W. 209, decided that a contingent claim against the estate of a decedent, which does not accrue and cannot be proven until after the administration is closed and the estate distributed, is not barred because not presented to the probate court for allowance. In that case the breach of the bond did not occur until nearly 10 years after the estate had been fully administered. This proceeding was instituted on the 13th of April, 1896, which was within six months of the decree for costs.

It was proper to make the administrator and the distributee and heir parties to this application. In Moore v. Wallis, 18 Ala. 458, it was held that where a ward, after the death and distribution of the estate of a surety on a guardian's bond, obtained a decree against the guardian upon which execution was issued and returned "No property," a court of equity would entertain jurisdiction of a bill filed by the ward against the personal and legal representatives of the deceased surety to enforce satisfaction of the demand. See, also, Turquand v. Kirby, hereinbefore cited and quoted from. A decree should be entered against the administrator, to be made out of the estate of the decedent.

The legislature of Ohio has provided, by sections 6217, 6218, for judgment in such a case as this against the distributees and heirs, after the settlement of an estate by an executor and administrator, for "an amount not exceeding the value whether of real or personal estate, that he or she shall have received under the will, or by the distribution of the estate of the deceased."

The judgment against the administrator would have the same effect, and is the proper proceeding in this case, inasmuch as the estate has not been fully settled, although it has passed into the possession of Mrs. Fewlass as sole heir and distributee.

The contention on her behalf that the estate is released from liability because Cooper and Nagel (the surety who became such after his death) were joint obligors, and that the death of Cooper terminated his liability at law by reason of the doctrine of survivorship, and, further, that, the remedy at law being gone, equity would not afford relief against the surety, has no foundation in law or in fact. They were not joint obligors, and, if they were, the doctrine of survivorship was abolished in Ohio by statute in 1840, and has never since been recognized. Section 210, Swan's St. Ohio 1841; Burgoyne v. Trust Co., 5 Ohio St. 586.

The further contention that the terms of the obligation, "I hereby acknowledge myself security for costs," limited the obligation to Cooper's life, and that, if he had meant to extend its duration be-

yond that limitation, he would have added, after "myself," "my executors and administrators," is without foundation in law. In 3 Williams, Ex'rs, 224, the rule is thus stated:

"The executors or administrators so completely represent their testator or intestate, with respect to the liability above mentioned [bonds, etc.], that every bond or covenant or contract of the deceased includes them, although they are not named in the terms of it; for the executors or administrators of every person are implied in 'himself.'"

The language, "hereby hold myself responsible," was construed, in Lloyd's v. Harper, cited above, to cover defaults accruing after the surety's death.

Lastly, it was contended that the moving defendants were bound to exhaust their remedies against the principals before proceeding against the sureties. This proposition was negatived by the supreme court of the United States in Babbitt v. Finn, 101 U. S. 7–14, where a similar contention was made. "Without more, the condition of the bond is a sufficient answer to that defense, as it stipulates that if he, the principal, fails to make his plea good, the obligors, principal, and sureties shall answer all damages and costs, which is quite enough to show that it was not necessary that an execution should be sued out on the judgment before a right of action would accrue to the judgment creditors to enforce their remedy on the bond. As between the obligors and obligees, all the obligors are principal debtors, though as between each other they may have the rights and remedies resulting from the relation of principal and surety." In Smith v. Gaines, 93 U. S. 341, the supreme court declared that at common law the sureties on an appeal bond were liable to a suit without the first issuing of an execution against the principal. In Davis v. Patrick, 6 C. C. A. 632, 57 Fed. 909, the circuit court of appeals of the Eighth circuit held that sureties on a supersedeas bond were not entitled to have a suit on the bond stayed until the attached lands of the principal should be sold and such security exhausted. In Woodward v. Peabody, 39 N. H. 189, the supreme court of that state decided that, where a defendant obtains judgment for costs against the plaintiff, the indorser of the plaintiff's original writ becomes immediately liable to pay such costs, and scire facias may at once be maintained against him without suing out execution upon the judgment. To the same effect is the ruling in Gaines v. Travis, Abb. Adm. 422, Fed. Cas. No. 5,180. See page 1063, 9 Fed. Cas. There the court said that the surety, if admonished or cited by sci. fa., could not be permitted to invoke prior execution upon the property of his principal. In the light of these authorities it must be held that the sureties are liable to judgment without the property of the principal being first exhausted. The judgments will, in the several cases, be for the amount of costs adjudged against the principals.