EMPIRE STATE–IDAHO MINING & DEVELOPING CO. et al. v. HANLEY.

(Circuit Court of Appeals, Ninth Circuit. February 6, 1905.)

No. 1,083.

1. PRIOR APPEAL—LAW OF THE CASE—MANDATE.

Where, on a prior appeal, it was held that defendant had excluded plaintiff from a mining property at least until 1901, such holding constituted the law of the case on a subsequent hearing with reference to damages sustained, though it was not contained in the mandate issued to the trial court.

2. SAME—FINDINGS—EVIDENCE.

On a hearing to determine damages for defendants wrongfully keeping plaintiff from possession of a mine, evidence *held* to justify a finding that such dispossession extended to January 1, 1902.

3. SAME—SUPERSEDEAS BOND—SUMMARY JUDGMENT AGAINST SURETIES.

Where, after affirmance on appeal, appellee filed in the trial court a motion to proceed containing a notice to the sureties on appellant's supersedeas bond that he would apply for a summary decree on the bond, service of which motion was admitted by the surety, such surety was a quasi party to the proceeding, and the court was authorized to render summary judgment against it, both under the state law (Ann. Code Idaho 1901, § 3576), providing that judgment may be entered on motion against the sureties by the court from which the appeal is taken, pursuant to the stipulations, and independent thereof.

Appeal from the Circuit Court of the United States for the Northern Division of the District of Idaho.

Geo. Turner, F. T. Post, and W. B. Heyburn, for appellants.
M. A. Folsom, for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge. On November 9, 1903, this court rendered a decree in the above-entitled cause, remanding the same to the court below with directions to modify its final decree in certain respects specified, and directing it to take, if necessary, further proof as to the time when the defendants to the suit, the appellants herein, ceased to exclude the appellee from the mine in question, "and gave or offered to him or his representatives free access thereto and free inspection thereof." In accordance with that decree, the cause was remanded to the Circuit Court. That court appointed a special examiner to take such testimony upon the question so suggested, and return the same to the court together with his opinion thereon, his opinion to be advisory only. Testimony was accordingly taken. Thereupon a motion and petition were served and filed by the appellee for judgment against the Empire State-Idaho Mining & Developing Company and the surety upon its supersedeas bond, the American Bonding Company. The surety entered a special appearance, and objected to the rendition of a judgment against it upon the ground that it had never been served with any process or rule or order of the court, and had not had its day in court, and that the court was without jurisdiction to render a judgment against it. The Circuit Court found from the evidence that the appellee was excluded from the mine up to January 1, 1902, and that thereafter he was not excluded, and it accordingly entered a decree

against the mining company for $260,672.43 and a decree against the American Bonding Company for $170,343.60, the amount of the decree from which the former appeal was taken.

The assignments of error present some questions which have already been adjudicated by this court, and which will therefore not be here reconsidered. The questions that are new are, first, did the trial court err in holding that the appellee was excluded from the mining property up to January 1, 1902? and, second, was that court without jurisdiction to render a judgment against the American Bonding Company? As to the exclusion of the appellee from the mining property, the appellants contend that he was not in fact excluded therefrom at any time, but that, if there were at any time theoretical exclusion, it ceased on May 6, 1901. The date so mentioned is the date of the decree of this court in the case of Hanley v. Sweeny, 109 Fed. 712, 48 C. C. A. 612, in which it was held that the appellee herein was the owner of an undivided one-eighth of the Skookum Mine, and that his conveyance of that interest had been fraudulently obtained by the opposing parties in that suit. The present suit was brought by the appellee herein to obtain an injunction against the further operation of the mine by the appellant the Empire State-Idaho Mining & Developing Company and to obtain an accounting of the antecedent working of the ground by said appellant. Upon the appeal from the decree of the Circuit Court this court, in Sweeney v. Hanley, 126 Fed. 102, 61 C. C. A. 153, said: "The case shows that from the beginning of the mining of the ore in controversy to at least the time of the decision of this court on May 6, 1901, in the case of Hanley v. Sweeny et al., 109 Fed. 712, 48 C. C. A. 612, the defendants to the suit claimed Hanley's interest in the mine in question by virtue of the deed here adjudged never to have been delivered, but to have been fraudulently gotten possession of by Sweeny and Clark, during all of which period they unlawfully and fraudulently excluded Hanley from the mine;" and this court in its opinion further said that the decree of the Circuit Court "must be so modified as to award the complainant, Hanley, judgment for one-eighth of the gross value at the mine of all ore extracted by the Empire State-Idaho Mining & Developing Company therefrom up to the time the defendants to the suit ceased to exclude him from the mine, and to give him or his representatives free access thereto and inspection thereof, and thereafter for one-eighth of the net value of all ore so mined by the defendant company from the mine or mining claim in question, together with legal interest," etc. It thus appears that it is settled by the adjudication of this court that the exclusion of the appellee from the mine continued at least until May 6, 1901. The fact that the views of the court so expressed in the opinion are not contained in the mandate which issued to the lower court renders them no less conclusive as the law of the case. Thompson v. Maxwell, 168 U. S. 451, 18 Sup. Ct. 121, 42 L. Ed. 539.

The trial court found that the exclusion of the appellee continued until January 1, 1902. That date was fixed as the date of the termination of the exclusion for the reason that it was shown that at that time a limited permission, through an order of the court, was given to the ap-

pellee's engineers and his watchman to enter the mining ground.    The evidence that the exclusion continued until that date consists in the following facts:    The decree of this court of May 6, 1901, was not complied with by the appellees in that suit.    They filed in this court a petition for rehearing, in which they reasserted their denial of Hanley's right to the property or to relief in equity.    After the denial of that petition they made an application to the Supreme Court for a writ of certiorari to review the judgment of this court.    That application was pending until January 13, 1902.    In December, 1901, the appellee herein presented an application to the Circuit Court for an injunction and an order of reference, supported by his affidavit, in which he deposed that the defendant company had constantly refused to permit him to enter the underground workings of said property for the purpose of working said property or inspecting the same, and that it had excluded him from entering said property for any purpose whatever. The Empire State-Idaho Mining & Developing Company, in opposition to the motion and application, replied to that affidavit, but did not deny the alleged fact of the exclusion of the appellee.    Upon the hearing on that motion and application counsel for said mining company, in the presence of the general manager and other officers thereof, vigorously objected to an order of the court permitting the appellee to enter the mine, upon the ground that he had no right therein.    Later, when the appellee presented to the Circuit Court his petition in said case for the appointment of a receiver and an injunction, together with his affidavit in support thereof, the resident manager of the mining company on February 6, 1902, presented his counter affidavit in opposition thereto, in which he admitted that said mining company "and its officers and agents have refused to permit the said Hanley to enter its underground workings; that it has no underground workings in which the said Hanley has any interest, or into which he is entitled to enter; deny that the said Hanley, for the purpose of working the said Skookum mine, or inspecting the same, or for any purpose, has any right to enter therein through any workings of the respondent corporation; admit that the respondent corporation has claimed exclusive title and right of possession to its said workings, and has excluded plaintiff from entering therein for any purpose whatever; deny that the said plaintiff has any right to enter into or within the workings of the corporation defendant, except by virtue of such orders as the court may make authorizing him to enter such workings for the purpose specified in said order; denies that any order has been made by said court authorizing said Hanley to enter within the workings for any purpose; and admit that on the 23d day of January, 1901, the corporation defendant did forbid the said Hanley entering into the said workings."    Against the force of these admissions of the affidavit, counsel for the appellants contend that the mining company was not seeking to obtain any relief based upon that paper.    They admit that the appellee had in his affidavit alleged his exclusion from the mine as one of the reasons why he was entitled to an injunction and the appointment of a receiver, and that the counter affidavit is possibly an admission of that statement in a qualified way for the purpose of that hearing; but they argue that,

so far as the hearing was concerned, it was immaterial whether the appellee were excluded from the mine or not. But whatever may have been the purpose of the affidavit, and however immaterial the question of the exclusion of the appellee from the mine may have been to the questions involved on the hearing of that application, the affidavit nevertheless shows clearly and distinctly the hostile attitude of the mining company toward the question of the admission of the appellee to the mining property—an attitude that, so far as the evidence shows, had been continuous and uninterrupted upon the part of the mining company and its predecessors in interest from the beginning of the litigation. It is true that the evidence in this case contains the admission of the appellee that he did not at any time between May 6, 1901, and January 1, 1902, ask the privilege of entering the mine, but it is also true that the mining company never offered him that privilege. Counsel for the appellants argue that, if there were exclusion in February, 1902, that fact would not tend to prove exclusion during the period between May 6, 1901, and January 1st following, and that presumptions do not work backwards. But we think the fair presumption is that an exclusion shown to have existed in and long prior to May, 1901, and to have existed in December and February following, was continuous between those periods, and that to show that it was so continuous the appellee was not required to prove a specific act of exclusion on either or any of the intervening days. The admission of the appellee's agents to the mine on January 1, 1902, was not the voluntary act of the mining company. It was obtained only upon the order of the Circuit Court, and against the opposition of the mining company. We find no error, therefore, in the finding of the Circuit Court that the exclusion continued at least until that date.

It remains to be considered whether the Circuit Court erred in entering a decree against the American Bonding Company of Baltimore. In November, 1902, the decree of the Circuit Court was entered in favor of the appellee for $175,867.02 and costs. Of that amount the appellee collected $5,523.42. Both parties appealed from the decree. Upon hearing the appeals this court directed a modification of the decree in favor of the appellee herein. A supersedeas bond in the sum of $200,-000, with the American Bonding Company as surety, had been given by the mining company upon its appeal. That appeal not having been sustained by this court, both the principal and the surety became liable for the amount of the decree appealed from. After the mandate of this court was filed in the court below, the appellee herein filed a motion to proceed, and gave notice to the appellants that he would apply for a summary decree upon the bond. Prior to the filing of the examiner's report, the appellee filed his petition and motion for summary judgment upon the bond, and gave due notice of his intention to present the motion. Service was made upon the mining company and upon the vice president of the American Bonding Company. Service upon the latter was admitted in the following words: "Service of the foregoing motion, petition, and notice is hereby admitted this 29th day of April, 1904." On the day fixed for the hearing the appellants appeared. The bonding company made objection to the entry of a sum-

mary judgment on the ground that no order to show cause had been served upon it, and it contended that the court had no jurisdiction to enter a judgment against it except upon process issued out of the court and under its seal.   The statutes of Idaho, as do those of many other states, provide that judgment may be entered on motion against the sureties by the court from which the appeal is taken, pursuant to the stipulations.   Idaho Ann. Code 1901, § 3576.   It is held that such a provision is not only not unconstitutional (Beall v. New Mexico, 16 Wall. 535, 21 L. Ed. 292), but that similar provisions of state laws may properly be followed by the federal courts (Smith et al. v. Gaines, 93 U. S. 341, 23 L. Ed. 901).   In Moore v. Huntington, 17 Wall. 417, 21 L. Ed. 642, Mr. Justice Miller said:

"It is a very common and useful thing to provide by statute that sureties' in appeal and writ of error bonds shall be liable to such judgment in the appellate court as may be rendered against their principals.   This is founded on the proposition that such sureties, by the act of signing the bond, become voluntary parties to the suit, and subject themselves thereby to the decree of the court."

Independently of such statutory provisions, it has been held that federal courts, upon a mandate determining that the conditions of the bond have been broken, will enter a summary judgment against the sureties on a supersedeas bond.   In Third National Bank v. Gordon (C. C.) 53 Fed. 471, it was held that, where a judgment of the Circuit Court has been affirmed by the Supreme Court, and the condition of the supersedeas bond given under rule 29 of the Supreme Court has been thereby broken, judgment may be had thereon by motion against the sureties as well as the principal.   The court said:

"The nature and character of a supersedeas bond seem to imply a more summary remedy upon it than a suit to enforce it.   The plaintiff's judgment is superseded, and he is for the time deprived of his remedy by execution to obtain the fruits of his judgment.   The supersedeas bond is given and approved by the judge of the court in which the cause was heard and the judgment obtained; and the giving and acceptance of such bond are, to some extent, like a confession of judgment, if the appellant fails to maintain his contention in the appellate court."

That decision was affirmed by the Circuit Court of Appeals for the Fifth Circuit in Gordon v. Third National Bank, 56 Fed. 790, 6 C. C. A. 125, in which, in a carefully considered opinion, it was said:

"In this connection it may be well to notice that the motion for judgment in this case has all the necessary elements of a scire facias; and, proper notice thereof having been served on all of the obligors in the bond, and they having all appeared, and the sureties having interposed demurrers, not well taken, considering it as a scire facias, and having failed to plead or answer, the court could well proceed to enter judgment on the record alone without other proof."

The court, having found in these considerations ground to sustain the judgment of the court below, proceeded to consider the case as the parties and the court below had treated it, namely, as a proceeding authorized by the state laws of Alabama, and the practice of the United States Circuit Court for that state and of the United States courts in general, and found upon that ground also that it was a proceeding in accordance with the law and practice of the federal courts.   In Blossom

v. Railroad Company, 1 Wall. 655, 17 L. Ed. 673, Mr. Justice Miller, speaking for the court, referred to the fact that after a decree adjudicating rights between the parties to a suit, other persons having no previous interest in the litigation may become connected with the case in the course of subsequent proceedings in such a manner as to subject them to the jurisdiction of the court and render them liable to its orders, and said:

"Sureties signing appeal bonds, stay bonds, delivery bonds, and receiptors under writs of attachment, become quasi parties to the proceedings, and subject themselves to the jurisdiction of the court, so that summary judgments may be rendered on their bonds or recognizances."

In Tyler Mining Company v. Last Chance Mining Company, 90 Fed. 21, 32 C. C. A. 498, this court held that a summary decree for damages upon an injunction bond could properly be entered against the sureties. Lea v. Deakin (D. C.) 13 Fed. 514; Russell v. Farley, 105 U. S. 433, 26 L. Ed. 1060. The trial court did not err, therefore, in rendering judgment against the surety on the appeal bond.

The decree of that court is affirmed.