UNITED STATES FIDELITY & GUARANTY CO. v. BURKE et al.*

(Circuit Court of Appeals, Ninth Circuit. January 8, 1917.)

No. 2744.

1. INJUNCTION ⬤⇒236—BOND—LIABILITY OF SURETY—BREACH OF CONDITION —"FINAL DECREE."

In a suit to foreclose a mortgage on timber lands, where the mortgagor, to prevent injunction against cutting timber, had given a bond conditioned on paying any judgment rendered against it, a decree, to the form of which no objection was made in the lower court, that the mortgagee recover of the mortgagor and the surety on the bond the amount of the mortgage, and have execution against them for any deficiency after the sale of the property, was not merely an ascertainment of the amount due prior to sale, but was a "final decree" disposing of all the issues, which fixed the liability of the surety on the bond.

[Ed. Note.—For other cases, see Injunction, Dec. Dig. ⬤⇒236.

For other definitions, see Words and Phrases, First and Second Series, Final Decree.]

2. INJUNCTION ⬤⇒241—BOND TO PREVENT INJUNCTION—LIABILITY OF SURETY —JURISDICTION OF COURT.

In a proceeding to foreclose a mortgage on timber land, the court has jurisdiction over the surety on a bond given to prevent injunction against the cutting of timber, and can render judgment against the surety for the deficiency after notice to the surety of application for judgment, to the sufficiency of which notice no objection was made in the district court.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 544–552; Dec. Dig. ⬤⇒241.]

Appeal from the District Court of the United States for the Southern Division of the Western District of Washington; Edward E. Cushman, Judge.

Suit by George B. Burke and another against the Mountain Timber Company for the foreclosure of a mortgage. From a decree of foreclosure, and for the recovery of a deficiency from the defendant and from the United States Fidelity & Guaranty Company as surety on a bond given to prevent injunction (224 Fed. 591), the surety appeals. Affirmed.

J. V. Beach, N. D. Simon, and R. C. Nelson, all of Portland, Or., for appellant.

A. E. Clark and M. H. Clark, both of Portland, Or., A. H. Imus, of Kalama, Wash., Coy Burnett and Edmund C. Strode, both of Portland, Or., M. J. Gordon, of Seattle, Wash., J. H. Easterday, of Tacoma, Wash., and I. E. Shrauger, of Mt. Vernon, Wash., for appellees.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge. In April, 1913, Burke and Ferris, appellees, brought suit to foreclose a mortgage given by Mountain Timber Company to secure certain promissory notes executed by the Mountain Timber Company for $32,500. The mortgage covered a tract of timber land in Cowlitz county, Wash. Two notes, each for the sum of $16,250, were given. One note matured February 3, 1911, and the

other February 3, 1912. No part of the notes had been paid. By the mortgage the Timber Company agreed with D. L. Kelly and his assigns that any timber cut by the Timber Company, or its assigns, on any of the lands mortgaged, before full satisfaction and payment of the mortgage, should be paid for to Kelly, or his assigns, at or before the time of cutting the timber, at the rate of $2.50 per thousand feet, according to prescribed method of scaling, and that payment so made should apply upon the amount due upon the mortgage.

The complaint alleged, among other things, that the chief value of the premises was the merchantable timber standing thereon; that the defendant had cut quantities of timber from the premises without making payment on account thereof; and that at the time of the commencement of the suit defendant was cutting and removing timber from the land, and would continue to do so unless restrained, thus lessening and endangering the mortgage security. Temporary injunction was prayed for, and on May 5, 1913, when the motion for injunction came on to be heard before the District Court, a stipulation was entered into between the parties to the suit. After reciting the commencement of the suit and application being made for a temporary injunction, the stipulation continued as follows:

"Whereas, the defendant has on this 5th day of May, 1913, filed in this court and cause a bond in the sum of $45,000, with the United States Fidelity & Guaranty Company as surety thereon, conditioned for the payment in full of any judgment which shall be rendered in favor of the plaintiff in this action: Now, therefore, in consideration of the filing of said bond, it is hereby stipulated and agreed: First. That plaintiff's application for an injunction be and the same is hereby withdrawn. * * *"

At the same time that the stipulation was filed, a bond executed unto George B. Burke by the Mountain Timber Company, as principal, and United States Fidelity & Guaranty Company, as surety, was filed. The bond, after recital of the institution of the suit heretofore referred to, contained the following clause:

"Now, therefore, we, Mountain Timber Company, a corporation, as principal, and United States Fidelity & Guaranty Company of Baltimore, Maryland, as surety, are held and firmly bound unto George B. Burke in the penal sum of forty-five thousand dollars ($45,000.00), for the payment of which, well and truly to be made, we hereby bind ourselves, our successors or assigns: Provided, and the condition of this obligation is such that if Mountain Timber Company shall pay, or cause to be paid, in full any judgment which shall be rendered in favor of the plaintiff in the above-entitled action, then this undertaking to be null and void; otherwise, to be and remain in full force and effect."

Upon a hearing the District Court found, among other things, that at the time of the commencement of the foreclosure suit and when temporary injunction was applied for, and at the time of the execution of the bond, defendant was cutting timber from the mortgaged premises, and that in consideration of the execution of the bond plaintiff did not seek to obtain a temporary writ of injunction, and defendant was permitted to cut and remove the timber from the premises, and that since the execution of the bond it had cut timber and diminished and impaired the security of the mortgage debt in a substantial amount. The court ordered judgment against the defendants Moun-

tain Timber Company and the United States Fidelity & Guaranty Company for $32,500, with interest, attorney's fees, and costs, and that judgment for foreclosure, with direction for the sale of the property conformably to the requirements of the statutes and the rules of the court, should be granted. Appeal to this court was taken by the United States Fidelity & Guaranty Company.

On June 15, 1915, the court rendered its opinion in favor of the plaintiffs and against the defendant Mountain Timber Company. The record shows that on July 6, 1915, attorneys for the plaintiff filed in the District Court a "notice of motion for filing and entering of findings of fact and conclusions of law," etc. This notice of motion, dated July 2, 1915, was addressed to the defendant Mountain Timber Company and Coy Burnett, its attorney, and United States Fidelity & Guaranty Company, and advised these defendants that on Tuesday, July 6, 1915, at 10 o'clock, at the courtroom, Tacoma, Wash., plaintiffs would move for signing and entering of findings of fact and conclusions of law in accordance with the opinion of the court which had been rendered and filed, and in accordance with findings and decree, copies of which had theretofore been served upon the defendant in the case. The notice contained this further clause:

"And at the same time and place the plaintiffs will move for the entry of findings and decree, which, among other things, will provide that judgment and decree shall go against the defendant and United States Fidelity & Guaranty Company, surety upon the bond to stay the issuance of an injunction; execution to issue against said companies, and either thereof, and their property jointly, in the event of a deficiency."

On the cover of the notice, "due service" was accepted at Portland, Or., on July 2, 1915, by acknowledgment of receipt of a copy by Coy Burnett, "W. K. K.," of attorneys for Mountain Timber Company. There was also on the cover of the notice an affidavit by J. F. Alexander, of Portland, Or., to the effect that he was employed at the office of A. E. Clark and M. H. Clark, attorneys, in Portland; that he served the notice on the United States Fidelity & Guaranty Company by handing to, and leaving with, one Newman, a clerk in the office of D. R. Tate, statutory agent of said United States Fidelity & Guaranty Company, a duly certified copy of the notice, certified to by M. H. Clark, one of the attorneys for the plaintiff; that such service was made July 2, 1915, at the office of the company and statutory agent in the Chamber of Commerce Building, Portland, Or.

[1] The contention of the appellant is that the District Court erred in entering a decree that plaintiff should recover of the Mountain Timber Company and the United States Fidelity & Guaranty Company $32,500, with interest from February 31, 1910, and attorney's fees and costs, and have execution against the Mountain Timber Company and the United States Fidelity & Guaranty Company for any deficit remaining after the sale of the realty ordered to be sold. In the assignment of errors appellant states as follows:

"The error alleged refers only to so much of said decree as affects the United States Fidelity & Guaranty Company, and the claim of error is based on the contention that the United States Fidelity & Guaranty Company was not a party to the suit, and that the said court had no jurisdiction in said

cause to render the said judgment and decree, or any judgment or decree whatsoever against the said United States Fidelity & Guaranty Company."

The argument is that under equity practice neither deficiency judgment nor personal judgment can be entered for the full amount of indebtedness in advance of sale under foreclosure, and that, therefore, the entry of a personal judgment against the Timber Company for the recovery of money was improper, and can only be sustained by construing the decree, not as a personal judgment for the full amount due plaintiffs, but as an ascertainment of the amount due, in accordance with the procedure in equity, prior to foreclosure sale. This is, in effect, a contention that as the bond was given to guarantee the payment by the Timber Company of any judgment against it, the condition of the bond has not yet been broken. But the language of the decree demonstrates the error in the major position. The court made a direct, single decree that plaintiff in the suit should recover against the defendants Mountain Timber Company and the United States Fidelity & Guaranty Company the sum of $32,500, with interest and attorney's fees, the whole amounting to $44,128, and ordered that the mortgage be foreclosed according to law and the rules and practice of the court; that the real estate described in the complaint be sold to satisfy the amount of the judgment; that the proceeds of sale should be applied to the payment of the judgment, and that plaintiff might have general execution against any of the property of the Mountain Timber Company and the Fidelity Company for any deficiency remaining after the application upon the judgment of the proceeds of the sale; that redemption right should be preserved and that the plaintiffs might become purchasers at foreclosure sale and let into possession.

Such a decree finds the mortgage valid, the amount of the debt, orders a sale of described premises for satisfaction of the debt, directs that the sum due on the mortgage, with interest and costs, be paid over to the mortgagee out of the proceeds of the sale, and adjudges that the defendants make good any deficiency which may be found to exist after the sale. Nothing is left for adjudication; hence the decree is final and complete on the merits of the controversy, and may be appealed from as a final decree in equity. Chicago, D. & V. R. R. v. Fosdick, 106 U. S. 47, 27 L. Ed. 47. The form of the decree was not objected to in the District Court, and no application to rectify it was there made. The bond bound the appellant to pay any judgment that might be rendered against Mountain Timber Company in the cause, and when the court made a decree against the principal, the liability of the appellant was fixed.

[2] Now, as to jurisdiction over appellant. In Russell v. Farley, 105 U. S. 433, 26 L. Ed. 1060, the Supreme Court reviews the English and American authorities in determining whether, where injunction bond is given, it is proper to assess damages, if no specific provision is made either in the bond or by any statute or rule of court, and the condition of the bond is simply to pay such damages as the party enjoined may sustain by reason of the injunction, if the court finally decided that the party was not entitled thereto. The court said it was

not satisfied that the cases of Bein v. Heath, 12 How. 168, 13 L. Ed. 939, and Merryfield v. Jones, 2 Curtis, 306, Fed. Cas. No. 9,486, were authority sufficient to disaffirm the power of the court having possession of the case, in the absence of any statute to the contrary, to have the damage assessed under its own direction.   Justice Bradley said:

"This is the ordinary course in the Court of Chancery in England, by whose practice the courts of the United States are governed, and seems to be in accordance with sound principle. The imposition of terms and conditions upon the parties before the court is an incident to its jurisdiction over the case; and having possession of the principal case, it is fitting that it should have power to dispose of the incidents arising therein, and thus do complete justice, and put an end to further litigation. We are inclined to think that the court has this power, and that it is an inherent power, which does not depend on any provision in the bond that the party shall abide by such order as the court may make as to damages (which is the usual formula in England), nor on the existence of an express law or rule of the court (as adopted in some of the states) that the damages may be ascertained by reference or otherwise, as the court may direct; this being a mere appendage to the principal provision requiring a bond to be taken, and not conferring the power to take one, or to deal with it after it has been taken. But whilst the court may have (we do not now undertake to decide that it has) the power to assess the damages, yet if it has that power, it is in its discretion to exercise it, or to leave the parties to an action at law. No doubt in many cases the latter course would be the more suitable and convenient one."

It is true the court found decision upon the point unnecessary, but its view of the law has now become fixed by positive and repeated decisions, in this and other appellate courts.   In Tyler Mining Co. v. Last Chance Mining Co., 90 Fed. 15, 32 C. C. A. 498, on behalf of the sureties on an injunction bond it was contended that no decree could be rendered against them because they were not parties to the suit.   Russell v. Farley, and the two cases of Bein' v. Heath and Merryfield v. Jones, heretofore referred to, were examined by the court, and the conclusion was reached that, since the intimations in Russell v. Farley had been made, the federal courts had the power to dispose of the incidents arising in the principal case and thus put an end to further litigation.   The court cited Lea v. Deakin (C. C.) 13 Fed. 514; Coosaw Mining Co. v. Farmers' Mining Co. (C. C.) 51 Fed. 107; Lehman v. McQuown (C. C.) 31 Fed. 138; and 2 Beach's Modern Equity Practice, § 770 (1894).

In Baker & Bennett Co. v. Cass Company et al., 224 Fed. 439, 140 C. C. A. 133, the Court of Appeals of the Second Circuit had this case:   Suit in equity was brought for infringement of letters patent. Preliminary injunction was granted, subject to the filing of a bond by the complainant to secure the defendants.   The condition of the bond was that if plaintiff should pay to the defendants enjoined such damages, not exceeding $5,000, as they might sustain by reason of the injunction if the court finally decided that the plaintiff was not entitled to injunction, then the obligation should be void; otherwise, effective.   Injunction was kept alive, and finally decree was made awarding perpetual injunction, with statutory damages in the sum of $500.   That decree was reversed by the Court of Appeals, and thereafter, in the District Court, the defendant petitioned for the appointment of a master to assess, under the injunction bond, dam-

ages sustained between certain dates in 1914. This petition was denied, and appeal taken by the defendants. The court quoted from Russell v. Farley, supra, and said:

"Although the foregoing observations, so far as they apply to the power of the court to dispose of the question of damages under the injunction bond as an incident to the principal case, were obiter, they are entitled to great weight. They were so treated by the Circuit Court of Appeals of the Sixth Circuit in Leslie v. Brown, 90 Fed. 171 [32 C. C. A. 556], * * * and of the Seventh Circuit in Mississippi Co. v. Watson Co., 202 Fed. 122 [120 C. C. A. 276]. * * * Both courts adopted the law as indicated by Mr. Justice Bradley, and so do we."

Another case which has bearing is Empire State-Idaho Mining & Developing Co. et al. v. Hanley, 136 Fed. 99, 69 C. C. A. 87. It was held that after an appeal had been taken to the Court of Appeals, and affirmance had been had, appellee could file in the trial court a motion to proceed containing a notice to sureties on appellee's supersedeas bond that he would apply for a summary decree on the bond. The court regarded such surety (service being admitted in that case) as a quasi party to the proceeding, and sustained authority to render summary judgment against the surety, both under the Idaho statutes and independently thereof. Tyler Mining Co. v. Last Chance Mining Co., Russell v. Farley, and Lea v. Deakin, supra, were cited. In Perry et al. v. Tacoma Mill Co., 152 Fed. 115, 81 C. C. A. 333, the court sustained the power of the District Court to enter summary judgment upon a supersedeas bond given on appeal from a decree foreclosing a mortgage on personal property for the value of such property where, after affirmance of the decree, the property was not produced.

In Cimiotti Unhairing Co. et al. v. American Fur Refining Co. et al. (C. C.) 158 Fed. 171, a temporary injunction was ordered ([C. C.] 117 Fed. 623) upon condition complainant furnish bond, which was filed and approved. Upon hearing, permanent injunction was filed and approved. (C. C.) 120 Fed. 672. The Court of Appeals of the Third Circuit reversed the decree of the District Court. 123 Fed. 869, 59 C. C. A. 357. The Supreme Court affirmed the reversal. 198 U. S. 399, 25 Sup. Ct. 697, 49 L. Ed. 1100. When the mandate went down, the Circuit Court ordered the master to take proofs and ascertain what damages the defendants had suffered. The surety on the injunction bond does not appear to have been notified of any of these proceedings. The master made his report, advising damages in an amount exceeding the penalty of the bond. Defendant asked judgment against complainants for the amount of the damages, and judgment against the surety for the amount of the bond. Judge Lanning said that he had not had the aid of counsel in discussing the question as to whether the surety company could be regarded as a party or a quasi party to the proceeding in such a sense as that an execution could be awarded against it, or whether the defendants were left to their remedy against the surety upon an action at law upon that company's undertaking. But after reference to the authorities, and in view of the fact that the undertaking of the surety company provided that the loss or injury in damages should be as-

certained as the court should direct, he concluded that defendants were entitled to such a decree. To sustain him he cites the opinion of this court in Tyler Mining Co. v. Last Chance Mining Co., supra, and Empire State-Idaho Mining & Developing Co. v. Hanley and Russell v. Farley, supra.

We need not go to the extent of holding that if no notice is given to the surety that judgment would be asked against it, judgment can go against it. Opinion upon that point is reserved. In the present case, no point of lack of notice is raised by the assignments of error, and as against the showing made of the service of notice upon the statutory agent of the surety company, no counter showing is relied upon. The notice may have been defective in form, or it may not have given as much time to the surety company to make preparation for the hearing as it desired; but the proper place to suggest any defects or to ask further time was the District Court. Our conclusion is that by signing the bond appellant made its contract to pay any judgment that might be rendered in the cause, and having had notice of intended application for judgment against it and opportunity for a hearing, the District Court had power to proceed to judgment against it.

We do not understand that there is, in the practical effect to be given to the decree, great difference between counsel for appellants and appellees. The decree directs the sale of the mortgaged property and the application of the proceeds of the sale to the payment of the expenses of the mortgage debt, and provides for issuance of execution as to any deficiency remaining after the application of the proceeds of the sale. It would seem that procedure under such a decree can only result in actually imposing upon the appellant liability for the payment of a deficiency judgment.

The decree appealed from is affirmed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes