## TOLEDO SCALE CO. v. COMPUTING SCALE CO.

(Circuit Court of Appeals, Seventh Circuit. March 25, 1922.)

No. 2784.

1. **Courts ⬤384—Questions involving decisions on facts requiring determination of entire record not certified to the Supreme Court.**

Where the situation is such that it would be proper to certify questions to the Supreme Court, but the determination of the questions requires a finding of facts, the determination of which by the Supreme Court would require a transmission of the entire record, the questions will not be certified, but the Circuit Court of Appeals will render its decision, which, if wrong, can be corrected by the Supreme Court on certiorari.

2. **Courts ⬤526—Injunction by Circuit Court of Appeals of proceedings in District Court of another circuit is collateral attack.**

An injunction rendered by the Circuit Court of Appeals to restrain further proceedings by the parties to a suit before it in the District Court of another circuit, which had enjoined the enforcement of a decree affirmed by the Circuit Court of Appeals, is a collateral attack on the decree of the District Court of the other circuit, which cannot be maintained, if the District Court had jurisdiction.

3. **Appeal and error ⬤1202—Only Circuit Court of Appeals, affirming decree, can entertain bill of review.**

The only court having jurisdiction to entertain a bill of review or petition for rehearing, after affirmance of a decree, is the Circuit Court of Appeals which affirmed the decree.

4. **Judgment ⬤720—Parties having favorable judgment cannot be compelled to relitigate in another court.**

A party who has obtained a final decision in his favor cannot be compelled to permit his adversary to relitigate the same matters in another court.

5. **Appeal and error ⬤456—Appellate court has exclusive jurisdiction over all ancillary questions.**

A Circuit Court of Appeals, before which a final decree was pending for determination, has exclusive jurisdiction, not only of the questions presented on the record transmitted by the trial court, but also of all ancillary questions, presented by independent evidence and bearing on the correctness and justice of the mandate to be entered.

6. **Judgment ⬤443(3)—Only "extrinsic fraud" supports independent bill attacking decree.**

It is only extrinsic fraud, which is the fraudulent conduct of the successful party practiced outside of an actual adversary trial, and practiced directly and affirmatively on the defeated party or his agents, attorneys, or witnesses, whereby such party was prevented from presenting fully and fairly his side of the case, that furnishes a basis for an independent bill restraining the enforcement of a decree, which bill may be entertained by any court, state or federal, having jurisdiction of the parties, regardless of the court which rendered the decree.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Extrinsic or Collateral Fraud.]

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

7. **Judgment ⚖507(2)—Only remedy for "intrinsic fraud" is by appeal to court which determined issues.**

The only remedy for "intrinsic fraud"—that is, fraudulent conduct of the successful party, practiced during the course of an adversary trial, and which had no effect directly and affirmatively to mislead the defeated party, to his injury, after he announced he was ready to proceed with the trial—is by application to the court having jurisdiction of the issues, and an independent bill to enjoin enforcement of the decree cannot be maintained for such fraud.

8. **Judgment ⚖443(3)—Fraud alleged in independent suit to enjoin enforcement of infringement decree held intrinsic.**

Allegations, in an independent bill in another circuit to enjoin the enforcement of a decree for infringement of a patent, that the complainant had purchased in the market practically all of the prior devices which anticipated its patent, and, though it had knowledge its patents were rendered invalid by such anticipation, it concealed that knowledge from defendant, and thereby secured a decree of infringement, to which it was not entitled, shows only intrinsic fraud, which does not support an independent bill to enjoin the enforcement of the decree.

9. **Patents ⚖324(6)—Decree establishing validity of patent and infringement, and remanding for an accounting, is only quasi final.**

In a suit for infringement of a patent, a decree rendered by the District Court, and affirmed on appeal, finding the patent valid and infringed, and remanding the cause for an accounting, was not a final decree, but only a quasi final decision, which, if nothing occurred to prevent, would in due course be carried into the final decree.

10. **Equity ⚖447(4)—Defendant not entitled to review on ground of fraud of which he had information before decree became final.**

Where defendant in a suit for infringement, in support of its petition for rehearing on the question of the validity of the patent, submitted an affidavit by the son of the inventor of a prior device, showing that the complainant had bought up in the market all the prior devices which had been sold commercially, in connection with litigation against another defendant for infringement of the same patent, it is apparent that at that time the defendant had knowledge of facts which, if diligently investigated, would have disclosed the fraud of complainant in acquiring and concealing the prior devices which anticipated its patent, so that defendant is not entitled to maintain a bill of review because of such fraud.

11. **Appeal and error ⚖1236—Sureties on supersedeas bond are parties subject to the jurisdiction.**

Sureties make themselves parties to the cause by signing the supersedeas bonds as sureties, and become subject to the same jurisdiction that controls their principal.

In Equity. Suit by the Computing Scale Company against the Toledo Scale Company. On petition to the Circuit Court of Appeals by complainant to enforce a final decree previously rendered against defendant and affirmed by the Circuit Court of Appeals. Petition granted.

See, also, 208 Fed. 410; 279 Fed. 648. Certiorari granted 257 U. S. ——, 42 Sup. Ct. 585, 66 L. Ed. ——.

John M. Zane, of Chicago, Ill., for petitioner.

Horace Kent Tenney, of Chicago, Ill., and George D. Welles, of Toledo, Ohio, for respondent.

Before BAKER, MACK, and EVANS, Circuit Judges.

BAKER, Circuit Judge. Computing Company's patent was granted in 1895 and expired in 1912. Toledo Company's infringement began in 1906 and continued throughout the life of the patent. Suit was begun in a District Court in Ohio in 1906 and Toledo Company answered that the patent was void by reason of prior patents and prior public use. In 1910 the present suit was instituted, and as a condition for extending time for taking evidence the court below required Computing Company to dismiss its Ohio suit. In answering the bill in this suit Toledo Company averred anticipation by reason of earlier patents, among them patent 106,869 granted to William H. Phinney in 1870, and further averred anticipation by reason of prior public use and sale "by various persons at various places within the United States, and among others at Pawtucket, R. I., by William H. Phinney, then and now, as defendant is informed and believes, residing at said Pawtucket." Additional instances of alleged prior use and sale were also set forth.

So far as the validity of the patent was concerned Computing Company pleaded a good case by setting forth its grant from the government; and thereupon Toledo Company was obliged to plead one or more of the affirmative defenses permitted by statute. So far as meeting its duty to go forward with proofs was concerned, Computing Company made a good prima facie case by introducing the patent and proving Toledo Company's infringement. Toledo Company introduced many prior patents and a large amount of evidence relating to alleged prior uses and sales, but none relating to the alleged prior use and sale by Phinney at Pawtucket. By its decree of June, 1912, sustaining validity and finding infringement, the court below necessarily decided that Phinney had neither used nor sold anything that could impair the patent.

In April, 1913, this court affirmed the decree of validity and infringement. 208 Fed. 410. Prior to the argument Toledo Company moved to have the cause remanded to the court below, with the direction to open the decree and receive newly discovered evidence relating to the alleged prior use by Phinney. This motion was overruled. In May, 1913, before our mandate had gone to the court below, Toledo Company filed another motion to the same end, referring to accompanying affidavits and exhibits for the facts that would require this court, in the interests of justice, to annul its affirmance of validity and infringement and direct the lower court to receive the new evidence and in the light thereof to decide afresh the issue of validity. This motion was also overruled.

During the accounting before the master Toledo Company took depositions concerning Phinney's commercial practice, filed them together with identified Phinney exhibits, and, insisting that the decree of validity was not in any sense determinative of that issue, contended that the new evidence entitled it to prevail on the issue of validity. The master, and likewise the court below on exceptions to the master's report, ruled that they had no authority to depart from this court's mandate which they were engaged in executing.

On appeal from the accounting decree (279 Fed. 648), Toledo Com-

pany again presented to this court its contentions respecting the Phinney testimony and exhibits. We ruled that the decree of validity and infringement was so far final in its essence as to preclude the court below and this court from deciding the issue of validity anew unless that decree should first be opened. Treating the matter as a petition in the nature of a bill of review, we held that the showing on its face disclosed a lack of reasonable diligence and no sufficient excuse for that lack.

After affirming the accounting decree in October, 1921, this court, on Toledo Company's motion, entered an order staying the issuance of the mandate pending the decision of the Supreme Court on petition for writ of certiorari. By virtue of that order the cause is still pending in this court.

On January 9, 1922, the Supreme Court denied the petition for writ of certiorari. 257 U. S. 657, 42 Sup. Ct. 184, 66 L. Ed. ——. On the same day Toledo Company filed a bill in the District Court of the United States for the Northern District of Ohio, Western Division, to enjoin Computing Company from taking any steps to enforce the decree of the court below as affirmed by this court, and that court on the same day issued a restraining order. On February 10, 1922, Computing Company filed in this court its petition for a rule (and on the same day the rule was issued) upon Toledo Company to show cause why it should not be enjoined from maintaining the bill in Ohio and why it and its sureties on supersedeas bonds should not be ordered to pay the decree. On February 13, 1922, the Ohio court issued a preliminary injunction.

In its petition Computing Company avers the proceedings in this court and in the court below as above narrated and also the bill and proceedings in the Ohio court. In its response Toledo Company sets up the Ohio bill and the proceedings thereon; and the Ohio bill itself exhibits the prior proceedings in this circuit.

As grounds for claiming that Computing Company should be enjoined from collecting the accounting decree, the Ohio bill alleged:

(1) Since 1901 Computing Company has endeavored to monopolize the computing scale business, and formed a conspiracy to which its officers and agents were parties to drive Toledo Company out of business.

(2) In 1902 and some subsequent years Computing Company built and sold a dishonest scale. Toledo Company exposed the fraud in public circulars. Computing Company unsuccessfully sought to enjoin the distribution of the circulars. This increased Computing Company's malicious hatred.

(3) Between 1902 and 1905 Toledo Company built a so-called "fan" scale. Computing Company brought suits for infringements of its patents (other than the patent here in suit) and finally dismissed them without trial.

(4) In 1901 Computing Company brought suit in the Eastern District of Pennsylvania to enjoin Federal Company from infringing this patent. Federal Company took depositions relating to the Phinney commercial practice and introduced three Phinney scales in evidence.

By stipulation each side retained possession of its own proofs and exhibits. The Phinney exhibits were later turned over by Federal Company's counsel to Computing Company's counsel who had them in possession until after the court below in this suit had tried and decided the issue of validity. Finally the Federal case was dismissed because, as Toledo Company alleges, Computing Company was advised by its then counsel that the Phinney practice was a dangerous defense and would probably defeat the suit.

(5) Similar prior suits against Randall in the Eastern District of Pennsylvania and against Standard Company in the Eastern District of Wisconsin were dismissed after similar evidence of the Phinney practice was brought forward by the defendants.

(6) After 1906 and before the court below decided the issue of validity Computing Company secretly purchased and took into its possession all the Phinney scales it could get, being all of the twenty scales Phinney ever made except one or two then in the hands of users, and except those in possession or control of defendants in the Federal, Randall, and Standard suits. Such purchases were made by Computing Company "in pursuance of said conspiracy," "secretly," and "fraudulently," for the purpose of preventing Toledo Company and the court below and this court from learning of the Phinney commercial practice.

(7) Toledo Company made diligent investigations to find the Phinney commercial practice and Computing Company's fraudulent suppression of evidence thereof (but never went to Pawtucket until after the trial in June, 1912). While Toledo Company has had knowledge of the Phinney commercial practice since 1912, it had no knowledge of Computing Company's fraudulent suppression of evidence thereof until December 20, 1921, which was after the affirmance of the accounting decree. And so Toledo Company has never had the opportunity to present to any court the true facts with respect to the Phinney sale and use, and has had no hearing on Computing Company's fraudulent conduct.

[1] From the foregoing synopsis of Computing Company's petition and Toledo Company's response it is evident that a conflict of jurisdiction is involved. Of course the District Court in Ohio would not enjoin Computing Company from proceeding in this court and the court below to enforce the accounting decree, unless that court felt constrained by the rules of law and equity to exercise such a jurisdiction. And likewise this court would not entertain the present petition and response, if it did not believe that the duty so to do was inevitably cast upon it. In this situation the course, if open, that would seem most consonant with our respect for the District Court in Ohio would be for us to certify the question to the Supreme Court. But inasmuch as we deem that the ultimate question cannot be answered without considering and weighing the recorded facts in the two courts, and inasmuch as that would require the transmission to the Supreme Court of the entire record, we find that the above suggested course is not available. Graver v. Faurot, 162 U. S. 435, 16 Sup. Ct. 799, 40 L. Ed. 1030. If, however, our answer is wrong, the question

can be presented to the Supreme Court by petition for writ of certiorari.

[2] In taking up the question we will endeavor to bear in mind throughout that the Ohio bill is not before us on demurrer, nor is the temporary injunction here on appeal. We have no jurisdiction to entertain a direct attack. Unless Computing Company's petition can prevail over Toledo Company's response as a collateral attack, our duty would be to dismiss Computing Company's petition for want of jurisdiction.

If the Ohio record, which fully embodies our record, demonstrates that the material issues there tendered were within the exclusive jurisdiction of this court, it seems to us that Computing Company's collateral attack should be adjudged successful.

[3] If the Ohio record discloses only a bill of review or a petition in the nature of a bill of review (National Brake Co. v. Christensen, 254 U. S. 425, 41 Sup. Ct. 154, 65 L. Ed. 341), or a petition for rehearing (Simmons Co. v. Grier Bros. Co., 258 U. S. ——, 42 Sup. Ct. 196, 66 L. Ed. ——, February 27, 1922), then this is the only court with proper warrant now to consider the question.

[4] True, Computing Company might stand on its answer in the Ohio court that the matter there tendered by Toledo Company had been finally adjudicated in this court or was pending within this court's exclusive jurisdiction. But a party who has a final decision in his favor is not compelled to permit his adversary to relitigate the same matters in another court. Kessler v. Eldred, 206 U. S. 285, 27 Sup. Ct. 611, 51 L. Ed. 1065; Supreme Tribe of Ben Hur v. Cauble, 255 U. S. 356, 41 Sup. Ct. 338, 65 L. Ed. 673 (in pursuance of which decision the District Court on the ancillary bill enjoined the defendants therein from maintaining in the state courts their suits in which the state courts had jurisdiction of the parties and a general jurisdiction of the subject-matter).

[5] Cases last above cited involved ancillary proceedings in District Courts. But if the final decree had been removed to and was pending in a Court of Appeals, that court would have not only exclusive jurisdiction of the questions presented on the record transmitted by the trial court, but also exclusive jurisdiction of ancillary questions presented by independent evidence and bearing on the correctness and justice of the mandate to be entered. Has the issue decided by the trial court now become moot? Has the appellant so availed himself of the decree as to require the dismissal of his appeal? Has new evidence bearing on the issue been discovered, on account of which equity demands that the decree be opened and a new trial had on evidence including the new? Is the appellant privy to an adjudication in another court which should bar the appeal? Hart Steel Co. v. Railroad Supply Co., 224 U. S. 294, 37 Sup. Ct. 506, 61 L. Ed. 1148, and National Brake Co. v. Christensen, 254 U. S. 425, 41 Sup. Ct. 154, 65 L. Ed. 341, are illustrative of the ancillary appellate jurisdiction.

If Computing Company's petition is in fact "ancillary to the original jurisdiction invoked," then the present proceeding is "still in its essence and nature a suit involving the validity of a patent." National

Brake Co. v. Christensen, 254 U. S. 425, 433, 41 Sup. Ct. 154, 157 (65 L. Ed. 341).

On the other hand, if Computing Company's petition is not ancillary to our original jurisdiction, and if Toledo Company's proceeding in the District Court in Ohio is in fact an original and independent bill to annul a decree in the hands of Computing Company on account of extrinsic fraud in its procurement, then we agree with the Ohio court that it has a jurisdiction which we must respect.

At the argument the ultimate contention of Toledo Company's counsel was that Toledo Company had never had an opportunity to present to any court the true facts with respect to the Phinney prior commercial practice; that Toledo Company had never had a hearing on Computing Company's fraudulent conduct; that Toledo Company was therefore entitled to have the District Court in Ohio decide whether Computing Company's conduct was fraudulent, and, if so found, then to proceed to decide whether Computing Company's patent was void in view of the prior art including the Phinney practice. Thereupon we inquired of counsel whether the fraud alleged in the Ohio bill afforded no way for Toledo Company to avoid payment of the accounting decree except by securing an adjudication that the patent was void in view of the Phinney practice; and counsel answered that such was the only way. Now it happens that the District Court in Ohio has general jurisdiction to decide the issue of the validity of a patent. But if counsel's notion of what really constitutes an original and independent bill is correct, then any state court having general jurisdiction in equity would have equal authority to entertain the bill, find fraud in the procurement of the original decree of validity, and then finally adjudge invalidity. Similarly a state court, on a bill alleging fraud in the procurement of an adjudication of bankruptcy, might adjudge that the defendant in the federal court was not a bankrupt. Thus would be created a right of removal of causes in reverse.

[6] It is only extrinsic fraud that furnishes a basis for the independent bill. And since such an independent bill is cognizable by any court of equity, state or federal, extrinsic fraud must be fraud of such a character as to enable the secondary court (a state court, for example) to annul the decree of the primary court (a federal court, for example) without trying the original case which might be of exclusively federal cognizance. As illustrative of extrinsic fraud the simplest case that occurs to us is this: A. sues B. in a federal court for infringement of a patent. A. procures the marshal to serve X. and to return that he has served B. X. appears and a trial results in a decree of infringement and damages against B. B. first learns of the fraud when the marshal levies on his property. B. thereupon files his independent bill against A. in a state court. On proof of the facts the state court annuls the federal decree by enjoining A. from taking any steps to enforce it. Here the fraud was extrinsic to any trial of the patent suit between A. and B.; the fraud constituted the entire basis of the state court's decree; the state court did not try validity or infringement or damages; A. was left in possession of his original cause of action; and if A. fails in a new infringement suit against B. on account of loss

of important evidence in the meantime or because B. has in fact a good defense, he has only himself to blame.

Extreme cases frequently afford the clearest exposition of a principle. As the facts approach the border line, difficulties and contrarieties of opinion may arise concerning the application, but the principle as such remains unaltered.

Dowagiac Mfg. Co. v. McSherry Mfg. Co., 155 Fed. 524, 84 C. C. A. 38 (6th C. C. A.), Graver v. Faurot, 76 Fed. 257, 22 C. C. A. 156 (7th C. C. A.), and Chicago, etc., Ry. Co. v. Callicotte, 267 Fed. 799, 16 A. L. R. 386 (8th C. C. A.), all were cases in which on the respective states of facts the courts found extrinsic fraud as distinguished from intrinsic fraud.

[7] A true definition of intrinsic fraud should demonstrate what extrinsic fraud is not, and should draw the line of demarcation between the two. United States v. Throckmorton, 98 U. S. 61, 25 L. Ed. 93, is in our judgment the authoritative precedent which we must follow. We find nothing in Barrow v. Hunton, 99 U. S. 80, 25 L. Ed. 407, Johnson v. Waters, 111 U. S. 640, 4 Sup. Ct. 619, 28 L. Ed. 547, Marshall v. Holmes, 141 U. S. 589, 12 Sup. Ct. 62, 35 L. Ed. 870, and Wells Fargo & Co. v. Taylor, 254 U. S. 175, 41 Sup. Ct. 93, 65 L. Ed. 205, to indicate any intention of the Supreme Court to depart from the principles and definitions in the Throckmorton Case.

From that case we deduce that intrinsic fraud is any fraudulent conduct of the successful party which was practiced during the course of an actual adversary trial of the issues joined and which had no effect directly and affirmatively to mislead the defeated party to his injury after he announced that he was ready to proceed with the trial. If during an actual adversary trial the successful party uses forged instruments, or perjured testimony, or fails to introduce witnesses of whom he has knowledge and whose testimony would help his adversary and impair his own case, he is guilty of fraud; but it is intrinsic fraud, for relief from which application must be made to the court having jurisdiction of the issues joined and tried. And that tribunal will of course grant prompt and adequate relief unless the laches or negligence of the applicant prevents.

From the Throckmorton Case we also deduce that extrinsic fraud is any fraudulent conduct of the successful party which was practiced outside of an actual adversary trial (if there ever was one) and which was practiced directly and affirmatively on the defeated party (or his agents, attorneys, or witnesses) whereby he was prevented from presenting fully and fairly his side of the case. If the successful party, by fraud or deception practiced on his opponent, keeps him in ignorance of the suit, or falsely represents that he is merely a nominal party against whom no relief is sought, or lulls his vigilance by a false promise of compromise, or kidnaps his witnesses, or seduces his attorney, or procures an attorney without authority to represent him in court, he is guilty of fraud; and inasmuch as the fraud is extrinsic, that is, a fraud not practiced upon the trial court and the opponent during the course of an actual adversary trial of the controversy between the parties, any court of equity has power to annul the decree so obtained.

[8] Applying these principles and definitions to the recorded facts before us, we find:

Toledo Company as an affirmative defense alleged a prior sale and use by Phinney at Pawtucket, R. I. Issue was joined by a reply in denial. When the case was called for final hearing on the issues of validity and infringement, both parties responded that they were fully prepared for trial. An actual adversary trial was had. It was hotly contested. There was a voluminous record on the merits of the patent. On that record the court below adjudged validity and infringement. In Toledo Company's Ohio bill and its response here, fraud on the part of Computing Company is alleged. Those allegations we accept at face value, though flatly denied by Computing Company. (But we pass by the adjectival, adverbial and collateral denunciations and regard only the substantive acts.) Before, at the time of, and during the trial, Computing Company by reason of the Federal, Randall, and Standard suits, and by reason of its investigations and purchases at Pawtucket, had full knowledge of the alleged Phinney commercial practice. Toledo Company, as Computing Company could see and know during the trial, had no such knowledge. Nevertheless Computing Company permitted the hearing of evidence to be closed without informing Toledo Company and the trial court that there were witnesses who could testify and exhibits at Pawtucket and elsewhere (some in its own factory) which could be introduced in evidence as to the bearing of the old Phinney scales upon the validity of Computing Company's patent.

Such a withholding or suppression of evidence, though less iniquitous than the affirmative use of forged documents, false exhibits, and perjured testimony, runs counter to one's sense of ideal fair play. Our judicial processes have advanced from determining controversies by wager of battle until courts now endeavor to learn the truth and to base their decrees thereon. If intrinsic fraud is practiced, fair play is satisfied by having a new and fair trial in the same court. But what is the truth of the controversy? Courts can judge only from the evidence before them. And if a second court may annul the decree of the first court because that decree is found by the second court to have been obtained through forged documents, or false exhibits, or perjured testimony, or withholding or suppression of known evidence, then a third court may annul the second court's decree of annulment by like means; and so on. Higher than any private good that could come from such second or subsequent decrees is the public good that was emphasized in the Throckmorton Case. "Interest rei publicæ ut sit finis litium."

That Toledo Company's allegations show only an intrinsic fraud is a conclusion that is reinforced by considering them also from the other point of view, namely, that of extrinsic fraud.

Computing Company made no representations, false or otherwise, to Toledo Company concerning the state of the evidence. There was no deception or misleading of Toledo Company by any conduct of Computing Company. Between these parties the only contact was in open court from opposite sides of the counsel table.

Computing Company's alleged fraudulent conduct in withholding and suppressing evidence known to it was not the proximate cause, or any cause, of Toledo Company's failure to introduce at the trial any evidence in support of its affirmative defense based on the alleged prior sale and use by Phinney at Pawucket. Computing Company never maneuvered Toledo Company into staying away from Pawtucket. Nor procured Phinney to lie to Toledo Company about what he had and to refuse to snow Toledo Company the scales in his possession. Nor attempted to induce the users of Phinney scales in and about Pawtucket to conceal them and deny their existence. Nor made it a condition of any of the alleged purchases that the sellers keep silent. Nor endeavored to have the comparatively few competitors of these parties in the automatic computing scale business withhold their knowledge of the prior art. Nor solicited the judges, clerks, parties and counsel in the Federal, Randall, and Standard suits to suppress the records.

At the argument of this matter Toledo Company properly admitted in open court that the exhibits which have been in its possession since some time prior to May, 1913, bring out the question of materiality of the alleged new evidence on the issue of validity as fully as would additional samples of the same Phinney scales. So it seems quite clear to us that proof of Toledo Company's single new allegation of fact respecting diligence, namely, that it did not learn until December 20, 1921, that Computing Company in 1906 began to gather up all the Phinney scales that were purchasable, does not affect the situation. Computing Company's alleged purchases did not prevent Toledo Company from securing abundant examples of the Phinney scales prior to May, 1913. During Toledo Company's challenged infringement for six years preceding the trial in June, 1912, any investigation in and about Pawtucket and in the offices of clerks and counsel where other makers of automatic computing scales were suable on Computing Company's patent, would have brought forth even more of the Phinney scales.

We believe that the petition and response now before us require us to formulate a mandate which to our view will do justice between these parties. Although Toledo Company's response does not contain a prayer for the opening of the final accounting decree, the subject-matter invites our attention as if a cross-petition had been filed.

[9] After we affirmed the decree of validity and infringement in April, 1913, Toledo Company in May came in with a motion in the nature of a bill of review on account of newly discovered evidence, the Phinney scales. Though the trial court's decree of validity was rendered upon a "final hearing" of the merits of the patent, that decree was not the final decree in the cause. And our decree of affirmance was no more final than the trial court's decree. But our "decree evidenced a quasi definitive decision which, if nothing occurred to prevent, would in due course be carried into the final decree." Simmons Co. v. Grier Bros. Co., 258 U. S. ——, 42 Sup. Ct. 196, 66 L. Ed. ——. Nothing to prevent in the way of newly discovered evidence could be originated in the trial court, for that court had no

authority except to proceed with the accounting in pursuance of our mandate. So no new evidence bearing on the merits of the patent could prevent the decree of validity from being carried into the final accounting decree except on a motion or petition in the nature of a bill of review presented in this court for our consideration and action under our ancillary appellate jurisdiction. And if our decree affirming validity was quasi definitive, was so far final that it would inevitably be carried forward into the final decree on accounting, unless opened by us, then our action in dismissing the proposed bill of review because it showed want of equity on its face was final in the same sense. Compare Embry v. Palmer, 107 U. S. 3, last paragraph of page 17, 2 Sup. Ct. 25, 27 L. Ed. 346.

[10] Nevertheless Toledo Company, without calling our attention at any time between 1913 and 1921 to any injustice in the trial of the issue of validity, put into the accounting record the same facts in the form of depositions that had been presented to us in 1913 by affidavits, and identified the same exhibits. Thus in the record on appeal from the accounting decree was again presented a proposed bill of review on account of newly discovered evidence. We held that, even if our order of dismissal in 1913 was not a bar, the showing, considered as a petition in the nature of a bill of review, was bad on its face, and again dismissed it for want of equity. In urging why our action should be otherwise, counsel then representing Toledo Company, not the counsel who filed the Ohio bill and the present response based thereon, stated in their brief:

"To refuse to consider the evidence in the present record respecting the Phinney scale, as affecting the validity of the patent in suit, would be to permit the plaintiff to take advantage of its concealment of essential facts known to it and unknown to the defendant or the court and its consequent imposition on both."

That this was a correct summation of the effect of the showing, as contrasted with present counsel's assertion that Computing Company's alleged fraudulent concealment of evidence was not involved, is demonstrated by an examination of the affidavits and depositions filed in support of the motions to open the decree of validity. One example will suffice. From the 1913 affidavit of Thomas Phinney, son of the grantee of the Phinney patent of 1870 and successor to his father's business:

"The three scales I before mentioned as having been assembled by me out of parts turned over to me by my father were sold one at a time to the same individual, whose identity I do not know. Some fifteen years ago he first applied for a scale, representing to me that he was from Connecticut, and desired the scale for the use of the Grocers' & Butchers' Association of Connecticut. About a year later he appeared again and I sold him a second scale of this same kind. Upon this occasion I asked him if he hadn't taken the first scale up to Boston and used it in connection with the business of the Boston Computing Scale Company. He admitted that he had some connection with that company, but stated that he was out of it, and wanted another scale to use in some other connection. I sold him one and he returned again about a year later and I sold him a third scale. * * * I have recently made repeated efforts to locate one of the scales which were put in regular use at places of business where my father sold them, but I have been unable to locate

a single one of them. I believe they were all gathered up some ten years ago in connection with the same litigation with reference to which I loaned Mr. Howson my scale."

Mr. Howson, so referred to, was counsel of Federal Company, sued as hereinbefore stated by Computing Company. Boston Company, so referred to, was Computing Company's predecessor in title and interest in the business built upon the patent in suit, which fact was made known to Toledo Company by evidence in this suit prior to the trial court's decree of June, 1912. So we believe that Phinney's testimony afforded a fair basis for Toledo Company's former counsel's contention that Computing Company had gathered in all the Phinney scales it could find and get possession of and had concealed and suppressed them as evidence. But if such is not a fair interpretation of Phinney's testimony, it at least shows that Toledo Company had continuously in its hands the thread which, if followed, would have led to Computing Company's lair, which Toledo Company's present counsel allege was first discovered on December 20, 1921, after the affirmance of the accounting decree.

Computing Company's petition discloses that the same contentions respecting the showing of newly discovered evidence were urged by Toledo Company's former counsel upon the Supreme Court in support of the petition for writ of certiorari.

During the eight years between our affirmance of the decree of validity and our affirmance of the final decree on accounting, Toledo Company, with the aforesaid facts and clews in its possession, and without applying to this court as the only court having authority to grant relief for newly discovered evidence which might make an accounting unnecessary, engaged Computing Company in a prolonged accounting contest which involved great labor and expense.

While Toledo Company's former counsel were urging upon the Supreme Court, as a sufficient excuse for lack of reasonable diligence, the alleged fraudulent conduct of Computing Company in purchasing, concealing and suppressing some of the Phinney scales, Toledo Company's present counsel were engaged in preparing the Ohio bill and having it ready to file the moment the contentions of the former counsel were denied.

[11] Respecting the surety companies that are made parties to Computing Company's petition, they by signing the supersedeas bonds as sureties made themselves parties to the cause and became subject to the same jurisdiction that controls Toledo Company. Empire State M. Co. v. Hanley, 136 Fed. 99, 69 C. C. A. 87; City of Clarksdale v. Williamson, 194 Fed. 412, 114 C. C. A. 374.

On the situation presented by the petition and response, we believe that equity requires the following action:

We now receive from Computing Company the certified copy of the Supreme Court's order denying Toledo Company's petition for writ of certiorari, and we direct the clerk to file it in this cause.

Unless the mandate which we now formulate be stayed on Toledo Company's motion filed within five days, the clerk is directed to issue and transmit to the court below the following mandate:

(1) Enter of record our affirmance of the final decree on accounting.

(2) Enjoin Toledo Company from further maintaining its Ohio bill and from filing elsewhere any similar bill.

(3) Enter summary decree against the sureties on the supersedeas bonds for the amount due upon the accounting decree, including all costs in both courts, but not exceeding the penalties of the bonds.

(4) Ascertain Computing Company's expenses in this matter, including reasonable attorney's fees, paid or incurred since the Supreme Court's denial of the petition for writ of certiorari on January 9, 1922, and enter summary decree therefor against Toledo Company, but not against the sureties on the supersedeas bonds.

So ordered.